THE STATE OF OHIO, APPELLEE, *v.* BREÉDLOVE, APPELLANT.

(No. C-870301—Decided
March 16, 1988.)

*Richard A. Castellini,* city solicitor, *Terrence R. Cosgrove,* city prosecutor, and *Michael K. Allen,* for appellee.

*H. Fred Hoefle,* for appellant.

BLACK, P.J. We dismiss this appeal *sua sponte* for lack of jurisdiction. The record on appeal does not contain a final appealable order in the form required by Crim. R. 32(B), which reads in full:

"A judgment of conviction shall set forth the plea, the verdict or findings and sentence. If the defendant is found not guilty or for any other reason is entitled to be discharged, judgment shall be entered accordingly. The judgment shall be signed by the judge and entered by the clerk."[1]

What is missing in the instant case is a judgment that is signed by the judge setting forth the plea, the finding of the court in the bench trial and the sentence.[2]

This was a traffic case in which the defendant was charged with a traffic-light violation under Cincinnati Municipal Code Section 506-40. In such cases, the Hamilton County Municipal Court uses a form we will call a "judge's sheet" in the absence of a designated title. Computer-printed on a sheet eight and one-half inches square, it is divided into three sections. The top section (one and one-half inches) contains basic data about the case, including the docket number, file number, name of defendant, and so forth. The middle section (four and one-half inches) contains two sets of three columns each, one set on the right half of the sheet and the other on the left half. The three columns in each set are titled, left to right, "date," "journal entry," and "sig," the last column being wide enough for a judge's initials but not wide enough for his signature. Under the titles are a series of blank horizontal lines on which can be recorded chronologically the actions taken in the case from initial appearance to disposition. The bottom section of the form (two and one-half inches) has a number of blanks with separate titles relating to the imposition of a penalty after conviction. Here, the judge may note such matters as the amount of the fine, the payment of costs, the remission or suspension of either or both, whether a stay is granted, and so forth. The very last line of the form has three blanks, one for a date, the second for "previous DUI convictions" and the third for the judge's signature.

In the instant case, the record includes a certified copy of the judge's sheet, the original papers or certified copies thereof, and the transcripts of three hearings. The case was set for pretrial or trial on March 9, 1987, at which time the court continued the case on its own motion for reasons that

---

[1] Under Traf. R. 20, the Rules of Criminal Procedure apply to journal entries in traffic cases.

[2] We have removed this case from the accelerated calendar because we believe that this dismissal should be fully explained.

are controverted in this appeal. The court referred the case to the assignment commissioner, who set it down for "nonjury" trial on April 9, 1987. The trial was held on that day after several motions and rulings were made that gave rise to three of the defendant's claims of error. The court announced its finding of guilty, and its "sentence" of $100, court costs, and a one-year driving suspension with certain provisions for driving to and from work. We can decipher the judge's sheet sufficiently to find handwritten notations about the fine, the costs and the driving suspension. However, the judge's sheet fails to contain a finding of guilty, and it is neither dated nor signed by the judge.[3]

This failure to comply with Crim. R. 32(B) was called to appellate counsel's attention prior to the hearing on appeal, during an appearance at the court's weekly summary calendar. On the Friday before the hearing, the trial judge ordered the clerk of courts to "file and journalize" a document entitled "ENTRY NUNC PRO TUNC 2-12-88" in both the municipal court and in this court of appeals.

The form and contents of the Entry Nunc Pro Tunc are best illustrated by the following excerpt from the first page:

"HAMILTON COUNTY COURT OF APPEALS
1ST APPELLATE DISTRICT
HAMILTON COUNTY, OHIO

"CITY OF CINCINNATI          :          CASE NO. 87 TRD 009708

          Plaintiff          :          COURT OF APPEALS NO.
                                                  C 870301

"-vs-                             :

"ROBERT LUTHER BREEDLOVE          :          ENTRY NUNC PRO TUNC
                                                                      2-12-88

          Defendant          :

"February 11, 1987          :
          Citation issuance date.

"March 3, 1987

"Arraignment — defendant signed written plea of not guilty — no appearance of record was made by the defendant before a judge or referee. The assignment commissioner set the case for trial on March 9, 1987 before Judge [                    ], Hamilton County Municipal Court."

The document is four pages long, and it is fair to state that the remarks

_____
[3] Eleven days after the announcement of the guilty finding defense counsel filed a motion for a new trial, which was heard and overruled before the notice of appeal was filed. That notice states that the appeal is taken from the overruling of the new-trial motion as well as from the conviction. There is an initialled (not signed) entry overruling the motion on the second page of the judge's sheet. Assuming without deciding that that is a valid entry, it cannot be a "final appealable order" in the absence of a valid entry of conviction in the first instance.

made under the dates subsequent to the first two have the same character and constitute a narrative review of each action taken in the case, as well as a brief explanation of the reasons for the court's actions in certain instances. A few of the actions recited in the Entry Nunc Pro Tunc are the same as those noted on the judge's sheet, and some actions can be substantiated by examination of the transcripts of proceedings. The great majority of the remarks, however, recite matter not found in the record on appeal, including the actions taken after the trial court lost jurisdiction through the filing of the notice of appeal. The very last subject is the correction of a word in the third transcript of proceedings. The Entry Nunc Pro Tunc evidences a desire by the trial court to advise the appellate court about the details of its actions. We do not denigrate this intent but we cannot validate this procedure.

The Entry Nunc Pro Tunc is invalid for two reasons. The first reason is procedural. The entry was "filed and journalized" in both the municipal court and in this court of appeals by the same order. Assuming without deciding that after a notice of appeal is filed, and without a remand from the court of appeals, a trial court may journalize an entry *nunc pro tunc* in the proper circumstances, we know of absolutely no provision in Ohio law whereby a trial court may file its own entry directly in a court of appeals. Whatever procedures may be available for transmitting a post-appeal, duly journalized entry to a higher court, that procedure cannot be short-circuited by a direct filing in the higher court.

The second reason that the Entry Nunc Pro Tunc is invalid is that it exceeds the very limited power of a court to enter a *nunc pro tunc* order. For more than sixty years, Ohio law has been clear that the function of a *nunc pro tunc* order is, essentially, clerical: it is to record officially an action or actions of a court actually taken but not duly recorded. *Helle* v. *Pub. Util. Comm.* (1928), 118 Ohio St. 434, 161 N.E. 282; *Webb* v. *Western Reserve Bond & Share Co.* (1926), 115 Ohio St. 247, 153 N.E. 289; *Reinbolt* v. *Reinbolt* (1925), 112 Ohio St. 526, 147 N.E. 808. As stated in *National Life Ins. Co.* v. *Kohn* (1937), 133 Ohio St. 111, 113, 10 O.O. 122, 123, 11 N.E. 2d 1020, 1021:

"* * * [T]he power to make *nunc pro tunc* entries is restricted ordinarily to the subsequent recording of judicial action previously and actually taken. It is a simple device by which a court may make its journal speak the truth."

It "speaks the truth" by correcting a judicial record that fails to show an order or a judgment of the court because the order or judgment was not recorded at all in the first instance. The purpose of a *nunc pro tunc* order is *not* to correct an error in the judgment itself, or to modify the judgment, or to render a judgment when none was made in the first instance. *Caprita* v. *Caprita* (1945), 145 Ohio St. 5, 30 O.O. 238, 60 N.E. 2d 483, 158 A.L.R. 1201, paragraph two of the syllabus; *McKay* v. *McKay* (1985), 24 Ohio App. 3d 74, 75, 24 OBR 129, 130, 493 N.E. 2d 317, 318.

In *National Life Ins. Co.* v. *Kohn, supra,* paragraph three of the syllabus, the Supreme Court ruled that when a court exceeds its power in entering a purported *nunc pro tunc* order, that order is invalid. We hold that the Entry Nunc Pro Tunc is invalid. We note that among the recitals made over the trial judge's signature are two that, standing by themselves, could be the cognizable content of a valid entry *nunc pro tunc*: the recitals that the court found the defendant guilty and that the court ordered a $100 fine, payment of court costs, and a one-year

driving suspension with exceptions for travelling to and from work. Nevertheless, their presence in the middle of an order that has no validity independent of those two recitals cannot save the document. The document is of seamless construction, and its parts are not severable. It is not the function of this court or of any party or counsel, or of any other interested person, to pick and choose the valid parts from among all the invalid parts.

The Entry Nunc Pro Tunc is stricken from the records of this court.[4] The record on appeal does not contain a final appealable order under the laws of Ohio. This appeal is dismissed.

*Appeal dismissed.*

DOAN and KLUSMEIER, JJ., concur.

---

[4] We must resist the temptation to delineate what would be the proper procedures to enter and record the orders and judgments of the municipal court because this court has, under the Ohio judicial system, no power of superintendence over the lower courts. That power resides in the Supreme Court of Ohio, and we believe that through the Rules of Criminal Procedure and the Traffic Rules, that power has been effectively and understandably exercised.