JOURNAL ENTRY AND OPINION
An accelerated appeal is authorized pursuant to App.R. 11.1 and Loc.App.R. 11.1. The purpose of an accelerated docket is to allow an appellate court to render a brief and conclusory decision.Crawford v. Eastland Shopping Mall Assn. (1983), 11 Ohio App.3d 158; App.R. 11.1(E).
In this accelerated appeal, plaintiff-appellant Harvey J. McGowan ("McGowan"), an attorney acting pro se, appeals from the granting of defendants-appellees Ms. Sumbra L. Giles ("Giles") and Cuyahoga County Metropolitan Housing Authority's ("CMHA") motion for summary judgment. For the reasons adduced below, we dismiss the notice of appeal for lack of jurisdiction.
The record on appeal indicates that Giles, a subordinate of McGowan, filed a complaint on October 14, 1997, with the Equal Employment Opportunity Commission ("EEOC") alleging sexual harassment by McGowan. In return, McGowan, an officer with CMHA's security department, filed a complaint on October 16, 1997, against Giles with CMHA alleging that Giles was sexually harassing McGowan. On October 27, 1997, McGowan filed a defamation action against defendants-appellees. See Cuyahoga County Common Pleas Case No. 342909. Also on October 27, 1997, McGowan filed an action in federal district court alleging that defendants-appellees defamed him and committed sexual harassment against him. See United States District Court, Northern District of Ohio, Case No. 1:97CV2735.
Shortly after the reporting of the sexual harassment to the employer, CMHA transferred McGowan from his regular shift which included Giles (a dispatcher) to another shift where she would not be present.
On May 28, 1998, the State trial court granted defendants' unopposed motion for judgment on the pleadings pursuant to Civ.R. 12(C) in case number 342909, with prejudice. See Journal Vol. 2220, page 519. On May 29, 1998, one day after the entry of judgment on the pleadings, McGowan filed his brief in opposition to the motion for judgment on the pleadings. On June 12, 1998, the State trial court entered a nunc pro tunc order which modified the dismissal of May 28, 1998, stating that the "order of 5/28/98 is corrected to read defts motion for judgment on the pleadings filed 3/19/98 is unopposed and is granted as pltf has failed to allege the required elements of a common law defamation claim. Dis. w/o prejudice." See Journal Vol. 2227, page 187. In lieu of filing a direct appeal from that final order of May 28, 1998, McGowan refiled his Complaint in State court on June 2, 1998, again alleging defamation by defendants-appellees[1] See Cuyahoga County Common Pleas Case No. 356675. On June 19, 1998, the federal court granted defendants' unopposed motion for judgment on the pleadings as to the defamation claim, leaving only the claim for sexual harassment pending in the federal action. In granting judgment on the pleadings on the defamation claim, the federal court noted that: (1) McGowan alleged that he had been defamed by the employer changing his shift; (2) the defamation allegedly caused damage to his reputation; (3) short of a termination of employment, defamation was not established when the employer changed his shift assignment; and, (4) defamation to one's reputation alone does not rise to the level of a "liberty" or "property" interest sufficient to invoke the procedural protection of the due process clause. See Federal Court Order attached to appellant's brief, at Exhibit 1.
On June 29, 1998, the EEOC issued its "Determination" relative to the complaint of Giles, finding that a violation of Title VII of the Civil Rights Act of 1964 was demonstrated by Giles,
 "... in that she was sexually harassed due to her sex, female, by being disciplined and having a sexual harassment complaint filed against her in retaliation for complaining about sexual harassment."
Within the "Conciliation Agreement"[2] accompanying the Determination relative to the complaint of Giles, and among the remedies provided under the Conciliation Agreement between Giles, CMHA and the EEOC, an agreed sanction was leveled against McGowan through his employer, CMHA, as follows:
 "Within ten (10) days of the ratification of this Agreement, Respondent [CMHA] shall notify Lt. Harvey McGowan in writing that he will be suspended without pay for a period of not less than thirty (30) days and the pay he would have earned but for the suspension will be donated to a charity of Charging Party's [Giles] choice. Further, Lt. McGowan will be notified in writing that conduct which creates a sexually hostile environment and/or retaliatory environment will not be tolerated by the Respondent and that any additional acts of discrimination shall result in his termination. This written warning shall remain in his official Respondent file during the life of this Agreement." [Explanation added.]
On July 16, 1998, CMHA terminated McGowan's employment.
On October 16, 1998. Giles and CMHA filed for summary judgment in the federal court action. On February 22, 1999, Magistrate Streepy issued a Memorandum and Order denying McGowan's motion to reinstate the defamation claim, and granting summary judgment on the sexual harassment claim brought by McGowan pursuant to42 U.S.C. § 1983.
On March 2, 1999, defendants filed with the State trial court a supplemental brief in support of summary judgment[3], informing the trial court of Magistrate Streepy's Order and requesting that summary judgment be entered in their favor against McGowan pursuant to the doctrine of collateral estoppel. McGowan filed a supplemental brief in opposition on March 11, 1999. On March 26, 1999, the State trial court granted summary judgment in favor of defendants-appellees, stating in the status form entry the following:
 "Defts motion for summary judgment is granted pursuant to the doctrine of collateral estoppel. Further, summary judgment is granted as to McGowan's claims against Sumbra Giles as plaintiff has failed to meet the essential elements of defamation. Summary judgment is also granted as to plaintiff's claim against CMHA as the employer's act of moving plaintiff from one shift to another, standing alone, is not sufficient evidence to show publication. See Lawson v. AK Steel Corp.
(1997), 121 Ohio App.3d 251."
McGowan appeals from the final order of March 26, 1999. Four assignments of error, each arguing that summary judgment was improperly granted, are presented for review.
Prior to addressing the merits of the assignments presented, we must determine whether this court lacks jurisdiction pursuant to App.R. 3 and 4 due to the improper use of a nunc pro tunc entry.
As previously noted, the trial court granted judgment on the pleadings pursuant to Civ.R. 12(C) in case number 342909, with prejudice, on May 28, 1998. Thereafter, the trial court, via anunc pro tunc entry on June 12, 1998, modified the final order of May 28, 1998, to be "without prejudice." The effect of this modification was to change the substantive nature of the May 28, 1998, order and create new rights for plaintiff by permitting plaintiff an opportunity to refile his Complaint.
The use of a nunc pro tunc order, modifying a previously entered "with prejudice" final order to a "without prejudice" final order, was addressed in Myers v. City of Shaker Heights
(June 7, 1990), Cuyahoga App. Nos. 57005 and 58056, unreported, 1990 WL 75236, at 2-3, wherein this court determined that such a modification of a final order (from "with prejudice" to "without prejudice") was a substantial change in the final order and could only be accomplished under the trial court's jurisdiction where the requirements of Civ.R. 60(A), to correct inadvertent clerical mistakes only, are met:
 The purpose of a nunc pro tunc entry "is restricted to placing upon the record evidence of judicial action which has been actually taken" and "it can be exercised only to supply omissions in the exercise of functions that are clerical merely." Jacks v. Adamson (1897), 56 Ohio St. 397, 402; "The function of nunc pro tunc is not to change, modify, or correct
erroneous judgments, but merely to have the record speak the truth. Ruby v. Wolf (1931), 39 Ohio App. 144 (Emphasis added.); Dentsply Internatl., Inc. v. Kostas (1985), 26 Ohio App.3d 116. See, also, Pepera v. Pepera (March 26, 1987), Cuyahoga App. Nos. 51989, 52024, unreported (A court may not by way of a nunc pro tunc entry, enter of record that which it intended or might have made but which in fact was not made.)
 The Ohio Supreme Court, in Helle v. Public Utilities Commission (1928), 118 Ohio St. 434, 439, stated:
 The power to enter a nunc pro tunc order is inherent in courts of justice. This power is necessary in order that the records of a court or other tribunal may be made to speak the truth where a clerical error has intervened.
See, also, State v. Breedlove (1988), 46 Ohio App.3d 78.
 This common law rule giving courts the power to enter nunc pro tunc orders has been codified by Civ.R. 60(A) which reads:
 RULE 60 .RELIEF FROM JUDGMENT OR ORDER.
 (A) Clerical Mistakes. Clerical mistakes in judgments orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time on its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is pending may be so corrected with leave of the appellate court.
 The proper application of Civ.R. 60(A) along with a definition of "clerical mistake" can be found in the case of Dentsply International Inc., supra wherein the court stated in its syllabus:
 A court has the power to correct a clerical error pursuant to Civ.R. 60(A). However, this rule is applied to inadvertent clerical errors only, and cannot be used to change something which was deliberately done. Thus, a nunc pro tunc entry made pursuant to Civ.R. 60(A) does not reflect a modification of an erroneous judgment but rather supplies omissions of a clerical nature which serve to have the record speak the truth.
 As used in Civ.R. 60(A) a `clerical mistake' is a type of mistake or omission mechanical in nature which is apparent on the record and which does not involve a legal decision of judgment by an attorney.
* * *
 A trial court is without jurisdiction to modify an order dismissing a cause with prejudice to one without prejudice, unless the requirements of Civ.R. 60 are met. See Pelunis v. G.M. M. (1982), 8 Ohio App.3d 194, 195.
 Since the trial court did not specify that its original dismissal was without prejudice the order operated as an adjudication upon the merits. Civ.R. 41(B)(3). The trial court, in attempting to "correct" its original dismissal, exceeded its jurisdiction and acted in contradiction to the purpose of a nunc pro tunc order.
This line of reasoning was generally reiterated in AssociatedEstates Corp. v. City of Cleveland (Aug. 5, 1999), Cuyahoga App. No. 75958, unreported, 1999 WL 588242, at 1:
 The purpose of a nunc pro tunc order is to have the judgment of the court reflect its true action so that the record speaks the truth. In re Estate of Cook (1969) 19 Ohio St.2d 121, 127, 249 N.E.2d 799. A nunc pro tunc order literally means "now for then." A trial court may exercise its nunc pro tunc authority in limited situations to correct clerical errors. A nunc pro tunc order may not be used to show what the court might or should have decided, or intended to decide, but what it actually did decide. McKay v. McKay (1985), 24 Ohio App.3d 74, 493 N.E.2d 317. Such an order is limited to memorializing what the trial court actually did at an earlier point in time. State ex rel. Phillips v. Indus. Comm. (1927), 116 Ohio St. 261, 155 N.E. 798. A court may not use a nunc pro tunc entry to enter, of record that which it intended or might have made but which in fact was not made. Webb v. W. Res. Bond Share Co. (1926), 115 Ohio St. 247, 153 N.E. 289. See also State ex rel. Litty v. Leskovyansky (1996), 77 Ohio St.3d 97, 671 N.E.2d 236.
 The trial court used the nunc pro tunc order to change its prior judgment entry. Even if the trial court intended to sign Associated Estates proposed journal entry, a nunc pro tunc order may not be used to void a final order but only to correct clerical errors. The trial court could not invoke the inherent power of the court to correct its journal by using a nunc pro tunc order in this fashion.
In the matter before us, the journal from case number 342909 reflects no reason for the subsequent nunc pro tunc modification of the order of May 28, 1998, to "without prejudice" other than to correct the prior final order. The journal also does not indicate that the trial court, prior to the final order of May 28, 1998, intended that order to be without prejudice. This modification is more than a simple correction of an absent-minded clerical error; instead, it represents the involvement of decision making by the trial court which is not the hallmark of Civ.R. 60(A). As previously cited, a nunc pro tunc order may not be used to "correct" a final order. See Ruby v. Wolf, supra, andDentsply Internatl., Inc. v. Kostas, supra. Absent compliance with Civ.R. 60(A), the use of nunc pro tunc was improper. Therefore, the failure of plaintiff-appellant to timely appeal the May 28, 1998, final order deprives this court of jurisdiction over the case before us.
Notice of appeal dismissed.
It is ordered that appellees recover of appellant their costs herein taxed.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
 ______________________________ JAMES D. SWEENEY, JUDGE
 TERRENCE O'DONNELL, P.J., and KENNETH A. ROCCO, J., CONCUR.
[1] The only substantive change in this refiled Complaint was identifying the employees who allegedly heard the defamatory statements. See refiled Complaint at paragraph number 4.
[2] This "Conciliation Agreement" was received by CMHA on July 6, 1998.
[3] The defendants had filed for summary judgment on January 20, 1999, prior to the Order of Magistrate Streepy. McGowan filed a brief in opposition to summary judgment on February 16, 1999.