DECISION.
{¶ 1} On September 6, 1998, Aaron Morrison was attempting to cross a street when he was struck and killed by an automobile driven by defendant Jackie Watkins. Watkins was uninsured. Morrison was survived by his mother, plaintiff-appellant Kathy Miller, and by his son, plaintiff-appellant Christopher Morrison. At the time of his death, Aaron Morrison resided with Miller.
 {¶ 2} Miller was employed by defendant-appellee U.S. Foodservice, Inc. As part of Miller's employment, U.S. Foodservice provided her with an automobile. U.S. Foodservice was insured pursuant to a commercial policy issued by defendant-appellee United States Fidelity Guaranty ("USFG").
 {¶ 3} Miller filed the within lawsuit, seeking damages for the wrongful death of Aaron Morrison. Her amended complaint included claims for uninsured-motorist benefits under the policy issued by USFG to U.S. Foodservice. The trial court granted a default judgment against Watkins on the issue of liability. All other parties filed motions for summary judgment.
 {¶ 4} On June 20, 2002, Miller filed a motion to amend her complaint to include her individual claim for uninsured-motorist benefits pursuant to Moore v. State Automobile Mutual Ins. Co., 88 Ohio St.3d 27,2000-Ohio-264, 723 N.E.2d 97, and Sexton v. State Farm Mutual AutomobileIns. Co. (1982), 69 Ohio St.2d 431, 433 N.E.2d 555. On June 20, 2002, the trial court granted USFG's motion for summary judgment. The trial court journalized an entry granting Miller's motion to amend her complaint on July 23, 2002. The trial court granted U.S. Foodservice's motion for summary judgment on September 3, 2002, and defendant State Automobile Mutual Insurance Company's motion for summary judgment on September 23, 2002. On October 11, 2002, the trial court journalized an entry entitled "nunc pro tunc entry," which stated, "The Entry is to correct a previously filed Entry. This Court's Entry filed on July 23, 2002, granting Plaintiff's Motion to Amend Pleadings to Include Personal Claim of Kathy Miller was filed erroneously. Plaintiff's Motion is NOT well taken and Plaintiff's Motion to Amend is Denied." The trial court journalized a "final judgment entry" on January 15, 2003, awarding Miller compensatory and punitive damages against Watkins. Miller has appealed, raising four assignments of error for our review. Miller has not raised any assignment of error challenging the trial court's granting of U.S. Foodservice's motion for summary judgment.
 {¶ 5} We first address Miller's fourth assignment of error, which alleges that the trial court erred in using a nunc pro tunc entry to reverse its previous order that had granted Miller's motion to amend her complaint to include her individual claim for uninsured-motorist benefits.
 {¶ 6} Courts possess inherent authority to correct errors in judgment entries so that the record "speaks the truth." See State ex rel. Foglev. Steiner, 74 Ohio St.3d 158, 1995-Ohio-278, 65 N.E.2d 1288. The purpose of a nunc pro tunc entry is to make the record "speak the truth." See id. The power to make nunc pro tunc entries is generally limited to the subsequent recording of a judicial action "previously and actually taken." See Endejann v. Endejann (Apr. 27, 1983), 1st Dist. No. C-820454. The function of a nunc pro tunc order is essentially clerical, to record officially an action of a court actually taken but not duly recorded. See State v. Breedlove (1988), 46 Ohio App.3d 78, 546 N.E.2d 420.
 {¶ 7} "[N]unc pro tunc entries are limited in proper use to reflecting what the court actually decided, not what the court might have decided or what the court intended to decide." See State ex rel. Fogle v. Steiner,
supra. A nunc pro tunc order may not be used to correct an error in the judgment itself, or to modify the judgment, or to render a judgment when there was not one made in the first instance. See State v. Breedlove,
supra.
 {¶ 8} When a nunc pro tunc entry reflects a substantive change in the judgment, it is inappropriate. See State ex rel. Fogle v. Steiner,
supra; State ex rel. Litty v. Leskovyansky, 77 Ohio St.3d 97,1996-Ohio-340, 671 N.E.2d 236; Cincinnati Central Credit Union v. Benson
(Aug. 1, 1997), 1st Dist. Nos. C-960882 and C-961110. A nunc pro tunc entry that reflects a change in the judgment to what the court intended to, but did not actually, decide is improper. See State ex rel. Mayer v.Henson, 97 Ohio St.3d 276, 2002-Ohio-6323, 779 N.E.2d 223. Where a court exceeds its power in entering a purported nunc pro tunc order, that order is invalid. See State v. Breedlove, supra; State v. Senz, 9th Dist. No. 02CA0016, 2002-Ohio-6464.
 {¶ 9} In this case, the trial court initially journalized an order granting Miller's motion to amend her complaint to include her individual claim for uninsured-motorist benefits. About three months later, the court entered a purported nunc pro tunc order denying Miller's motion. The trial court clearly made substantive changes regarding the disposition of Miller's motion. Such substantive charges were improper in a nunc pro tunc order. The trial court misused the nunc pro tunc order. Therefore, the order was invalid. The fourth assignment of error is sustained.
 {¶ 10} Miller's first assignment of error, which alleges that the trial court erred in refusing to consider her individual claim for uninsured-motorist benefits, is subsumed in our disposition of the fourth assignment of error and is sustained solely for the reasons set forth in that disposition.
 {¶ 11} We address Miller's second and third assignments of error together. Miller's second assignment of error alleges that the trial court erred in failing to find that she had uninsured-motorist coverage by operation of law under the policy issued by USFG to U.S. Foodservice.[1] Miller's third assignment of error alleges that the trial court erred in failing to find that Aaron Morrison was an insured for purposes of uninsured-motorist benefits under the USFG policy. Miller argues that the purported rejection of uninsured/underinsured-motorist coverage by U.S. Foodservice did not meet the requirements of Linko v. Indemnity Ins. Co. of North America,90 Ohio St.3d 445, 2000-Ohio-92, 739 N.E.2d 338, and that, therefore, such coverage arose by operation of law pursuant to former R.C. 3937.18.
 {¶ 12} The rights and duties of the contracting parties are governed by the statutory law in effect at the time of entering into a contract for automobile liability insurance. See Ross v. Farmers Ins. Group ofCos., 82 Ohio St.3d 281, 1998-Ohio-381, 695 N.E.2d 732. Therefore, the Am.Sub.H.B. No. 261 version of R.C. 3937.18 ("former R.C. 3937.18") governed this action.
 {¶ 13} Former R.C. 3937.18 required that both uninsured- and underinsured-motorist coverage be made available under automobile liability insurance policies. See Roper v. State Automobile Mutual Ins.Co., 1st Dist. No. C-010117, 2002-Ohio-3283. If the insured did not expressly reject uninsured/underinsured-motorist coverage, the coverage arose by operation of law. See id.; Selander v. Erie Ins. Group,85 Ohio St.3d 541, 1999-Ohio-287, 709 N.E.2d 1161.
 {¶ 14} The Ohio Supreme Court set forth the requirements for an express and knowing rejection of uninsured/underinsured-motorist coverage in Linko v. Indemnity Ins. Co. of North America, supra. In determining whether a valid waiver of uninsured/underinsured-motorist coverage had been made, the Linko court held that the four corners of the insurance policy controlled and that no extrinsic evidence could be admitted to prove that a waiver had been made expressly and knowingly. The offer and rejection of uninsured/underinsured-motorist coverage had to appear in the insurance policy itself. See id.; Roper v. State Automobile MutualIns. Co., supra. In order to constitute a valid waiver of uninsured/underinsured-motorist coverage, the policy had to demonstrate that the insurer informed the insured of the availability of uninsured/underinsured-motorist coverage, set forth the premiums, described the coverage and expressly stated the coverage limits. See id.
 {¶ 15} USFG argues that it satisfied the requirements for a valid and explicit rejection of uninsured/underinsured-motorist coverage when it completed a "Supplemental Auto Application" that purported to reject uninsured/underinsured-motorist coverage in Ohio. We have examined the "Supplemental Auto Application," and we hold that it did not comply with the Linko requirements for a valid rejection of uninsured/underinsured-motorist coverage. The "Supplemental Auto Application" did not set forth the premiums for the rejected coverage, and, therefore, it was invalid. See Glover v. Smith, 1st Dist. Nos. C-020192 and C-020205, 2003-Ohio-1020. In addition, we note that the "Supplemental Auto Application" was not contained within the "four corners of the policy." Because the purported rejection of the uninsured/underinsured-motorist coverage was invalid, the coverage arose by operation of law pursuant to former R.C. 3937.18.
 {¶ 16} Having determined that uninsured/underinsured-motorist coverage arose by operation of law, we must now determine whether Miller and Aaron Morrison were insureds under the USFG policy.
 {¶ 17} The policy issued by USFG to U.S. Foodservice provided automobile liability coverage in the amount of $2,000,000. U.S. Foodservice was the named insured. The declarations page of the liability policy listed "covered autos" for liability coverage as symbol 41, which was described on page one of the commercial automobile policy as "any auto." The liability portion of the USFG policy defined "insureds" as (1) "You for any covered auto" and (2) "Anyone else while using with your permission a covered `auto' you own, hire or borrow[.]"
 {¶ 18} The policy contained an "Employees as Insureds" endorsement that provided, "Any `employee' of yours is an `insured' while using a covered `auto' you don't own, hire or borrow in your business or your personal affairs." The policy also contained a "Broadened Coverage for Named Individuals" endorsement, which added to the definition of an "insured" as follows: "Any individual named in the Schedule and his or her spouse, while a resident of the same household, are `insureds' while using any covered `auto' described in Paragraph B.1. of this endorsement." Paragraph B.1. of the endorsement provided, "Any auto you don't own, hire or borrow is a covered `auto' for Liability Coverage while being used by any individual named in the Schedule or by his or her spouse while a resident of the same household except: a. Any `auto' owned by that individual or by any member of his or her household; b. Any `auto' used by that individual or his or her spouse while working in a business of selling, servicing, repairing or parking `autos.'" The Schedule in the endorsement listed the "name of the individual" as "[a]ny employee furnished with a company car."
 {¶ 19} The USFG policy also provided uninsured/underinsured-motorist coverage in states where the law did not permit U.S. Foodservice to reject such coverage. The declarations page of the policy listed "covered autos" for purposes of the uninsured/underinsured-motorist coverage as symbol 45, which was described on page one of the commercial automobile policy as "Owned `Autos' Subject To A Compulsory Uninsured Motorists Law. Only those `autos' you own that, because of the law in the state where they are licensed or principally garaged, are required to have and cannot reject Uninsured Motorists Coverage. This includes those `autos' you acquire ownership of after the policy begins provided they are subject to the same uninsured motorists requirement."
 {¶ 20} The "Broadened Coverage for Named Individuals" endorsement added to the definition of an "insured" as follows: "Changes in AutoMedical Payments and Uninsured and Underinsured Motorists Coverages. The following is added to Who Is An Insured: Any individual named in the Schedule and his or her `family members' are `insureds' while `occupying' or while a pedestrian when being struck by an `auto' you don't own except: Any `auto' owned by that individual or by any `family member.'" Section E of the endorsement provided, "As used in this endorsement: `Family member' means a person related to the individual named in the Schedule by blood, marriage or adoption who is a resident of the individual's household, including a ward or foster child."
 {¶ 21} Clearly, if the uninsured/underinsured-motorist coverage in the USFG policy had been effective in Ohio, Aaron Morrison would have been an "insured" for purposes of uninsured-motorist benefits. Miller, as an employee furnished with a company car, was an individual named in the Schedule. Aaron Morrison was a "family member" because he was related to Miller by blood and resided in her household at the time of his death. Aaron Morrison was struck while a pedestrian by an auto that was not owned by him, by any "family member," or by U.S. Foodservice.
 {¶ 22} The question that we must decide is whether to look to the terms of the uninsured-motorist coverage contained in the USFG policy to determine what terms and conditions applied to the uninsured-motorist coverage that arose by operation of law in Ohio.
 {¶ 23} The purpose of uninsured-motorist coverage is "to protect persons from losses which, because of the tortfeasor's lack of liability coverage, would otherwise go unprotected." See Cincinnati Indemnity Co.v. Martin, 85 Ohio St.3d 604, 1999-Ohio-322, 710 N.E.2d 677, citingMartin v. Midwestern Group Ins. Co., 70 Ohio St.3d 478, 1994-Ohio-407,639 N.E.2d 438, and Abate v. Pioneer Mut. Cas. Co. (1970),22 Ohio St.2d 161, 258 N.E.2d 429.
 {¶ 24} We hold that the terms and conditions of the uninsured-motorist coverage in the USFG policy that were in effect for states in which uninsured-motorist coverage could not be rejected were applicable to the uninsured-motorist coverage that arose by operation of law in Ohio. The parties contracted for uninsured-motorist coverage in certain states. The terms set forth in the USFG policy were the terms for which the parties to the contract bargained. Clearly, the parties intended the terms and conditions of the uninsured-motorist coverage set forth in the policy to apply in states where U.S. Foodservice's uninsured-motorist coverage was effective. We hold that the same terms and conditions arose by operation of law in Ohio pursuant to former R.C. 3937.18.
 {¶ 25} We hold that Aaron Morrison was an "insured" because he met the definition of an "insured" under the uninsured-motorist coverage that arose by operation of law in Ohio. The second and third assignments of error are sustained.[2]
 {¶ 26} The "nunc pro tunc entry" of October 11, 2002, is hereby vacated. The order of the trial court granting summary judgment in favor of U.S. Foodservice is affirmed. The order of the trial court granting summary judgment in favor of USFG is reversed, and this cause is remanded for further proceedings consistent with law and this Decision.
Judgment affirmed in part and reversed in part, and cause remanded.
Sundermann, P.J., and Hildebrandt, J., concur.
[1] We note that Miller's individual claim was not addressed by the trial court, and we do not address it here. We address only her claim as administratrix of Aaron Morrison's estate.
[2] Westfield Insurance Co. v. Galatis, 100 Ohio St.3d 216,2003-Ohio-5849, 797 N.E.2d 1256, is distinguishable from the instant case because Westfield involved a policy of insurance where the employee of a corporation was not a named insured under a commercial automobile policy issued to the employer. Miller, as an "employee furnished with a company car," was a named insured in the USFG policy.