[Cite as *State v. Houston*, 2014-Ohio-3111.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-130429 |
| | | TRIAL NO. B-1205053(B) |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| RAJ HOUSTON, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed and Cause Remanded

Date of Judgment Entry on Appeal: July 16, 2014

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Paula E. Adams*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, *Christine Y. Jones, David Hoffman* and *Josh Thompson*, Assistant Public Defenders, for Defendant-Appellant.

Please note: this case has been removed from the accelerated calendar.

**DINKELACKER, Judge.**

{¶1} In three assignments of error, defendant-appellant Raj Houston claims that the trial court erred in convicting him of two counts of kidnapping, two counts of aggravated robbery with one gun specification, one count of aggravated burglary with a gun specification, one count of theft of a motor vehicle, and one count of having a weapon while under a disability. We find no merit in Houston's arguments. But we note that the trial court failed to accurately record that Houston was to serve all his prison terms consecutively. We therefore remand the cause to the trial court to correct the clerical error pursuant to Crim.R. 36.

### Home Invasion Leads to Several Charges

{¶2} On the evening of July 11, 2012, Houston and his friend Darian Lawrence entered onto the Amberley Village property of Robert and Joan Brown. The Browns were an elderly couple who rarely entertained visitors at their secluded home. Lawrence approached one of the vehicles owned by the Browns, while Houston approached the back door of the home and knocked. Mr. Brown saw Lawrence at his vehicle, and went out the back door to confront him. At that point, both Lawrence and Houston drew weapons. Houston knocked Mr. Brown to the ground and entered the home, while Lawrence approached. Once in the home, Houston knocked Mrs. Brown—who was in poor health—to the kitchen floor. Lawrence ordered Mr. Brown into the home and onto the kitchen floor as well.

{¶3} While Lawrence held the couple at gunpoint, Houston began searching the home for things to steal. Several minutes later, he returned to the kitchen area carrying a flat-screen television. Lawrence told Houston to forget about stealing property because he wanted to focus on stealing money. He demanded that Mr. Brown give him all of his money, but Mr. Brown had only a few dollars in his

2

pocket, and told Lawrence that the couple did not keep money in the home. At that point, Lawrence saw Mr. Brown's ATM card, and ordered Mr. Brown to take him to the bank to withdraw money from the account. Mr. Brown was led to one of the couple's vehicles, and was forced to drive to the nearest bank location, which was a few miles away.

{¶4} While Lawrence and Mr. Brown were gone, Houston continued to hold Mrs. Brown at gunpoint while she lay on the kitchen floor. In his subsequent statement to police, Houston claimed that he had been trying to protect Mrs. Brown from harm, and that he even let her walk outside in the yard to get some fresh air. But Mrs. Brown did not confirm this characterization of his conduct. Instead, she testified that Houston was going around wiping surfaces with a kitchen towel in an attempt to remove fingerprint evidence. When asked if she thought that Houston was trying to protect her, she said no.

{¶5} Once Lawrence and Mr. Brown returned from the bank, Lawrence returned to searching the home for money, while Houston watched the couple, who were again on the kitchen floor. By this time, the stress of these events was beginning to take a significant toll on Mrs. Brown, and Mr. Brown asked if he could call an ambulance. Houston refused and ordered Mr. Brown to deal with her. After several more minutes of Lawrence searching the home for money, the two left in one of the Browns' vehicles, taking jewelry and other items that Lawrence had collected. Before they left, Mr. Brown asked them to honk when they had left the property so that he could seek immediate medical attention for his wife. They did not do so. Once Mr. Brown was sure that Lawrence and Houston had left, he called 911.

{¶6} After finding the Browns' vehicle, investigators from the Amberley Village police department were able to develop Lawrence as a suspect in the case. A

3

search of Lawrence's apartment resulted in the recovery of several items taken from the Browns' residence. A search of Lawrence's cellular telephone revealed a number of photographs of Lawrence and Houston taken around the time of the crimes. The Browns then identified Houston from a photo array. A search of his apartment resulted in the recovery of other items taken from the Browns' residence.

{¶7} Houston was arrested, and gave a statement to police in which he admitted involvement in the crimes, but significantly downplayed his role. He claimed that he had really been an unwilling participant in the events of that day and that he had been trying to protect Mrs. Brown from Lawrence.

{¶8} Houston, along with Lawrence, was indicted on two counts of kidnapping, in violation of R.C. 2905.01(A)(2), with gun specifications (counts 1 and 2); two counts of aggravated robbery, in violation of R.C. 2911.01(A)(1), with gun specifications (counts 3 and 4); two counts of robbery, in violation of R.C. 2911.02(A)(2), with gun specifications (counts 5 and 6); one count of aggravated burglary, in violation of R.C. 2911.11(A)(1), with gun specifications (count 7); one count of aggravated burglary, in violation of R.C. 2911.11(A)(2), with gun specifications (count 8); one count of theft of a motor vehicle, in violation of R.C. 2913.02(A)(4), with a gun specification (count 10); theft, in violation of R.C. 2913.02(A)(4), with a gun specification (count 11); and one count of having a weapon while under a disability, in violation of R.C. 2923.13(A)(2) (count 13). Counts 9 and 11 related solely to Lawrence. After a jury trial, Houston was found guilty of all counts and specifications relating to him.

{¶9} At Houston's sentencing hearing, the trial court merged counts 5 and 6, the two robbery counts, count 8, the R.C. 2911.11(A)(2) aggravated-burglary count, and count 11, the theft-of-property count. In addition, the trial court merged all the

gun specifications, except the three-year specifications on counts 4 and 7. The trial court then sentenced Houston to 11 years in prison for count 1, 11 years in prison for count 2, 11 years in prison for count 3, 11 years in prison for count 4, 11 years in prison for count 7, 18 months in prison for count 10, and 36 months in prison for count 13. In addition, the trial court imposed three-year prison terms for the specifications to counts 4 and 7. The trial court then ordered that "all of the counts are to run consecutive to each other and to the firearm specifications. Total to be served is 65 and a half years in the Ohio Department of Corrections."

### Houston's Sentences Were Proper

{¶10}    In his first assignment of error, Houston claims that the trial court erred when it imposed maximum, consecutive sentences. Under R.C. 2953.08(G)(2), we may only modify or vacate Houston's sentences if we clearly and convincingly find that either (1) the record does not support the mandatory sentencing findings, or (2) that the sentence is otherwise contrary to law. *State v. White*, 2013-Ohio-4225, 997 N.E.2d 629, ¶ 11 (1st Dist.).

### Consecutive Sentences

{¶11}    R.C. 2929.14(C)(4) requires a court to make certain findings before imposing consecutive sentences. *State v. Alexander*, 1st Dist. Hamilton Nos. C-110828 and C-110829, 2012-Ohio-3349, ¶ 13 and 16. Consecutive sentences imposed without the findings are clearly and convincingly contrary to law and must be vacated. *State v. Cowins*, 1st Dist. Hamilton No. C-120191, 2013-Ohio-277, ¶ 36.

{¶12}    Under R.C. 2929.14(C)(4), the sentencing court must find that consecutive sentences are necessary to protect the public or to punish the offender. *State v. Rashid*, 1st Dist. Hamilton Nos. C-120777 and C-120778, 2013-Ohio-4458, ¶ 9.

The court must also find that consecutive sentences are not disproportionate to the offender's conduct and to the danger the offender poses to the public. *Id.* Finally, the court must find that: (1) the offender committed one or more of the offenses while awaiting trial or sentencing, while under a sanction imposed under R.C. 2929.16, 2929.17, or 2929.18, or while under postrelease control for a prior offense; (2) at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct would adequately reflect the seriousness of the offender's conduct; or (3) the offender's criminal history demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender. *Id.*, citing *Alexander* at ¶ 15.

{¶13} Houston does not contend that the trial court failed to actually make the appropriate findings. The record would belie such an assertion. Instead, he argues that the findings were not supported by the record in light of his claim that Lawrence was the "leader" and that Houston was actually trying to protect Mrs. Brown. The trial court simply did not believe these claims. The trial court observed that the evidence against Houston was "overwhelming," that he had committed "horrible and despicable crimes," that he had "terrorized an elderly couple in the sanctity of their own home," that he had "held them at gunpoint," and "robbed them and left them begging for their lives." After making those observations, the trial court found that consecutive sentences were necessary to protect the public and/or or punish him; that they were not disproportionate to the seriousness of his conduct and the danger he posed to the public; that the harm he caused was so great or unusual that no single prison term adequately reflected the seriousness of his conduct; and that his criminal history demonstrated the

need to protect the public. These findings are supported by the record, and the imposition of consecutive sentences was not otherwise contrary to law.

## Maximum Sentences

{¶14} We likewise conclude that the imposition of maximum prison terms was supported by the record. The court was not required to make findings or to give reasons for imposing the maximum term of confinement. *See White*, 2013-Ohio-4225, 997 N.E.2d 629, at ¶ 8. Therefore, we are limited to considering whether the imposition of maximum sentences was contrary to law. This court has stated that

> a sentence [is] not clearly and convincingly contrary to law where the trial
> court has considered the purposes and principles of sentencing set forth
> in R.C. 2929.11 and the seriousness and recidivism factors contained in
> R.C. 2929.12, properly applied postrelease control and imposed a
> sentence within the statutory range.

*Id.* at ¶ 12, citing *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124, ¶ 18. The sentences imposed in this case were within the statutory ranges, and the trial court properly considered the appropriate sentencing guidelines before imposing maximum sentences. *See State v. Kennedy*, 1st Dist. Hamilton No. C-120337, 2013-Ohio-4221, ¶ 118 (we presume that a trial court properly considered the factors listed in R.C. 2929.11 and 2929.12 when a defendant fails to affirmatively demonstrate otherwise). Further, the trial court properly imposed postrelease control. Therefore, the imposition of maximum prison terms was not contrary to law

## Sentencing Consistency

{¶15} Houston argues that he should not have received an aggregate sentence that was nearly four times the length of the one that Lawrence received, and that the

larger aggregate sentence was only imposed because he elected to proceed to trial, while Lawrence pleaded guilty. But there is no evidence in the record that Houston received a larger aggregate sentence because he elected to exercise his right to a jury trial. Further, Lawrence pleaded guilty to a reduced number of charges, making that sentencing determination unique from that of Houston.

{¶16} Even had the two been identically situated, this court would not conclude that the trial court had failed to impose sentences that were "consistent with sentences imposed for similar crimes committed by similar offenders." *See* R.C. 2929.11(B). This court has noted that, "[a]lthough we acknowledge the statutory mandate for consistency in sentencing, consistency does not require that identical sentences be imposed for co-defendants." *State v. Rowland*, 1st Dist. Hamilton No. C-000592, 2001 Ohio App. LEXIS 2088 (May 11, 2001). Consistency merely requires the trial court to weigh the same statutory sentencing factors for each defendant. *State v. McIntosh*, 160 Ohio App.3d 544, 2005-Ohio-1760, 828 N.E.2d 138, ¶ 13 (1st Dist.). Our role in evaluating a sentence challenged for inconsistency is to determine whether the trial court properly considered the factors and guidelines contained in the sentencing statutes and whether the record supports the court's findings. *State v. Ryan*, 1st Dist. Hamilton No. C-020283, 2003-Ohio-1188, ¶ 10. Since the trial court properly considered the statutory factors and guidelines, we find no inconsistency in Houston's sentence.

{¶17} Houston's first assignment of error is overruled.

### Houston Was Not Convicted of Allied Offenses of Similar Import

{¶18} In his second assignment of error, Houston claims that he was convicted of allied offenses of similar import that were subject to merger. We disagree.

{¶19}    Under R.C. 2941.25, a trial court may, in a single proceeding, sentence a defendant for two or more offenses having as their genesis the same criminal conduct or transaction, if the offenses (1) were not allied offenses of similar import, (2) were committed separately, or (3) were committed with a separate animus as to each offense. *State v. Goshade*, 1st Dist. Hamilton No. C-120586, 2013-Ohio-4457, ¶ 22, citing *State v. Anderson*, 2012-Ohio-3347, 974 N.E.2d 1236, ¶ 15 (1st Dist.).

{¶20}    Unless committed separately or with a separate animus, allied offenses of similar import must be merged for purposes of sentencing following the state's election of which offense should survive. *Id.* citing *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, paragraphs one and two of the syllabus. "When determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered." *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, paragraph one of the syllabus. The court must "review the entire record, including arguments and information presented at the sentencing hearing, to determine whether the offenses were committed separately or with a separate animus." *State v. Washington*, 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661, ¶ 24. A criminal defendant bears the burden to show that he or she is entitled to merger of offenses under the allied-offenses statute. *State v. Whipple*, 2012-Ohio-2938, 972 N.E.2d 1141, ¶ 36 (1st Dist.).

{¶21}    Houston first argues that the kidnapping and aggravated robbery counts relating to Mrs. Brown should have been merged by the trial court. We disagree.

{¶22}    Certainly the commission of aggravated robbery necessarily entails the restraint of the victim. *See Anderson* at ¶ 25, citing *State v. Jenkins*, 15 Ohio St.3d 164, 473 N.E.2d 264 (1984), fn. 29. But where "the restraint is prolonged, the confinement is secretive, or the movement is so substantial as to demonstrate a significance

9

independent of the robbery, there exists a separate animus, a separate 'immediate motive,' to support the kidnapping conviction." *State v. Chaffer*, 1st Dist. Hamilton No. C-090602, 2010-Ohio-4471, ¶ 11, quoting *State v. Logan*, 60 Ohio St.2d 126, 397 N.E.2d 1345 (1979), syllabus.

{¶23} We simply cannot agree with Houston's argument that Mrs. Brown was "forced to lie on the floor only long enough to commit the aggravated robbery" in the home. She was detained far longer than the time necessary to complete that offense. She was held during that phase, to be sure, but also while Lawrence took Mr. Brown to the ATM machine. While they were gone, Houston moved Mrs. Brown around the home. The significant time period during which Mrs. Brown was held, along with her movement, coupled with the fact that Houston had a weapon, compounded the danger faced by a woman already in frail health. We cannot say that the kidnapping in this case was "merely incidental" to the commission of the aggravated robbery. *See Anderson* at ¶ 29 (if the kidnapping was merely incidental, then the legislative intent is to require merger). Therefore, the trial court did not err when it failed to merge the kidnapping and aggravated robbery counts relating to Mrs. Brown.

{¶24} Houston also argues that the kidnapping, aggravated-robbery, aggravated-burglary, and theft-of-a-motor-vehicle counts that related to Mr. Brown should have been merged by the trial court. We disagree.

{¶25} As for the kidnapping count, Mr. Brown's restraint was again prolonged; he was removed from the home by Houston's armed compatriot, and forced to drive several minutes to a local bank, get out of the car, and withdraw money from an ATM machine. He was then forced to drive back to the home, and was then again held in the home while the two armed intruders searched for more property to steal. As the *Logan* court held, "where the asportation or restraint exposes the victims to a substantial

increase in the risk of harm separate and apart from the underlying crime of robbery, a separate animus [also] exists for kidnapping." *Logan* at syllabus. In *State v. Chaffer*, this court concluded that kidnapping and aggravated-robbery counts were committed with separate animi. *Chaffer*, 1st Dist. Hamilton No. C-090602, 2010-Ohio-4471. In *Chaffer*, two defendants accosted bank employees as they were leaving a bank. They produced weapons, ordered the employees to unlock the bank, and robbed it. This court held that the resulting kidnapping and aggravated-robbery charges were not subject to merger.

> They moved Insprucker and Murray, at gunpoint, from the parking lot into the bank building, and they forced Insprucker to lie on the floor where passersby could not see her. And to aid their escape, they moved the two to the bank vault and ordered them to remain there, significantly increasing the risk of harm to the victims.

*Id.* at ¶ 15.

{¶26} Like in *Chaffer*, Lawrence's treatment of Mr. Brown—forcing him to leave the home, drive to the bank, drive back home—subjected him "to a substantial increase in the risk of harm apart from that involved in the robbery." *See id.* The added danger of forcing the elderly Mr. Brown to drive while the armed Lawrence ordered him to go the bank and withdraw money exponentially increased the risk of harm. The chance of an automobile accident, the chance that Mr. Brown would encounter another individual who might frighten Lawrence into using his weapon, and Mr. Brown's prolonged detention all created a substantially increased risk of harm. Therefore, the trial court did not err when it failed to merge the kidnapping charge with the other offenses.

{¶27}   We next address the aggravated-burglary and aggravated-robbery counts relating to Mr. Brown.  Houston was convicted of aggravated burglary under R.C. 2911.11(A)(1), which prohibits trespass by force, stealth, or deception in an occupied structure when the offender inflicts, or attempts or threatens to inflict, physical harm on another.  Houston was also convicted of aggravated robbery under R.C. 2911.01(A)(1), which prohibits attempting or committing a theft offense while having a deadly weapon on or about the offender's person and either displaying the weapon, brandishing it, indicating that the offender possesses it, or using it.

{¶28}   This distinction between the aggravating elements of the two offenses distinguishes this case from this court's decision in *State v. Shears*, 1st Dist. Hamilton No. C-120212, 2013-Ohio-1196.  In that case, the defendant was convicted of aggravated burglary and aggravated robbery for a home invasion that resulted in the murder of the victim.  This court found that the two counts were subject to merger.  But in that case, "the conduct that provide[d] the aggravation for both counts was the same: the physical harm that Shears caused to Mr. Banatwala in order to rob him." *Id.* at ¶ 41.

{¶29}   In this case, the aggravating factor for the burglary was the infliction or attempted infliction of physical harm, while the aggravating factor for the robbery was the use of a deadly weapon.  These were, when considering Houston's conduct, separate offenses. *Accord State v. Adams*, 1st Dist. Hamilton No. C-120059, 2013-Ohio-926 (aggravated-burglary and aggravated-robbery convictions were proper when the aggravating conduct for each offense was different).  Therefore, the trial court did not err when it failed to merge the aggravated-burglary and aggravated-robbery charges with the other offenses.

{¶30}   Houston also argues that his conviction for theft of a motor vehicle should have been merged by the trial court.  But the theft of the motor vehicle was not an

12

offense that, when committed, could possibly have resulted in the commission of any of the other offenses for which he was convicted. *See Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, at ¶ 48 (the question is whether it is *possible* to commit one offense and commit the other with the same conduct). It is simply not possible to commit theft of a motor vehicle and, in so doing, also commit aggravated robbery, aggravated burglary, or kidnapping, thus the offenses do not merge. *Id.* at ¶ 51.

{¶31} Finally, Houston argues that his conviction for having a weapon while under a disability should have been merged by the trial court. But, similar to the analysis regarding the theft of a motor vehicle, Houston's possession of a weapon was not allied with any of the other offenses Houston committed. Therefore, the trial court properly declined to merge the weapons-under-disability charge with the other offenses.

{¶32} Houston was not convicted of allied offenses of similar import that were subject to merger by the trial court. Therefore, we overrule Houston's second assignment of error.

### Houston Was Not Denied the Effective Assistance of Counsel

{¶33} In his third assignment of error, Houston claims that his convictions were the result of ineffective assistance of counsel. In particular, he argues that counsel failed to (1) file a motion to suppress his statement and his identification in the photo array; (2) object to the admission of photographs depicting property not taken from the Browns; (3) object to hearsay statements regarding the criminal activities of Lawrence and Lawrence's brother; (4) object to the reference in his statement to his juvenile adjudication for aggravated robbery; and (5) effectively argue that the charges for which he was found guilty were allied offenses of similar import subject to merger.

13

{¶34}   A court will presume that a properly licensed attorney is competent, and the defendant bears the burden to show ineffective assistance of counsel.  *State v. Hamblin*, 37 Ohio St.3d 153, 155-156, 524 N.E.2d 476 (1988).  To sustain a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient, and that the deficient performance prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶35}   Houston first argues that counsel was ineffective for failing to seek to suppress his statement and the Browns' identification of him in the photo array.  But Houston has failed to demonstrate that either argument would have succeeded, and the record does not support the conclusion that the trial court would have granted either motion.  Counsel's failure to file or prosecute a motion to suppress would be prejudicial only if the defendant had a reasonable probability of success on that motion.  *State v. McCrary*, 1st Dist. Hamilton No. C-080860, 2009-Ohio-4390, ¶ 13.  Therefore, it cannot form the basis for a claim of ineffective assistance of counsel.

{¶36}   Houston next argues that trial counsel was ineffective for failing to object to the admission of photographs of property that had not been taken from the Browns.  But the items that had been taken were pointed out to the jury, and Mr. and Mrs. Brown identified those items that belonged to them.  Therefore, Houston has failed to demonstrate—or to argue to this court—how the admission of such evidence was prejudicial.  Therefore, it cannot form the basis for a claim of ineffective assistance of counsel.

{¶37}   Houston next argues that trial counsel was ineffective for failing to object to hearsay statements relating to the criminal activities of Lawrence and Lawrence's brother.  Not only has Houston failed to show how he was prejudiced by the admission of these statements, that evidence was part of trial counsel's strategy—a strategy that

continues through this appeal—to depict Lawrence as the criminal leader and Houston as the unwilling participant. This court will not find ineffective assistance when the failure to object to evidence is part of a reasonably sound trial strategy that falls "within the wide range of professionally competent assistance." *State v. Trusty*, 1st Dist. Hamilton Nos. C-120378 and C-120386, 2013-Ohio-3548, ¶ 65. Therefore, it cannot form the basis for a claim of ineffective assistance of counsel.

{¶38} Houston next argues that trial counsel was ineffective for failing to seek redaction of the portion of his statement in which he referred to his juvenile adjudication for aggravated robbery. On appeal, counsel argues that the admission of this evidence violated Evid.R. 404(B) and created the improper assumption that "if Mr. Houston committed a similar crime, he must have done it in this case." The problem with this argument is that it was never Houston's contention at trial that he did not commit these crimes. Even on appeal, counsel concedes that Houston "does not dispute that he participated with his co-defendant, Darian Lawrence, in the robbery of Robert and Joan Brown in their home." The strategy of trial counsel was to paint Lawrence as the ringleader. Houston's juvenile adjudication, and his subsequent confinement, were necessary to that narrative because it was there that he had met Lawrence. The strategy was sound, if not successful, below. *See State v. Clayton*, 62 Ohio St.2d 45, 49, 402 N.E.2d 1189 (1980) (even a "questionable" strategy does not constitute a deprivation of the effective assistance of counsel). Therefore, it cannot form the basis for a claim of ineffective assistance of counsel.

{¶39} Finally, Houston argues that trial counsel was ineffective for failing to properly raise the issue of allied offenses of similar import, if this court were to determine that such a failure constituted a waiver of the argument on appeal. Since we have fully considered his second assignment of error, Houston was not prejudiced by

15

any failure of trial counsel to raise particular allied-offense arguments below. Therefore, it cannot form the basis for a claim of ineffective assistance of counsel.

{¶40} Houston's third assignment of error is overruled.

**Error in Sentencing Entry**

{¶41} In its brief, the state points out an error in the trial court's sentencing entry. During the sentencing hearing, the trial court had ordered that "all of the counts are to run consecutive to each other and to the firearm specifications. Total to be served is 65 and a half years in the Ohio Department of Corrections." In the sentencing entry, the trial court stated that "the sentences in counts #1, #2, #3, #4, #10 and #13 are to be served consecutively to each other." The entry failed to mention that count 7 was also to be served consecutively, but did correctly state the aggregate total prison sentence of 65 and one half years.

{¶42} Crim.R. 36 states that: "[c]lerical mistakes in judgments, orders, or other parts of the record, and errors in the record arising from oversight or omission, may be corrected by the court at any time." A nunc pro tunc entry may be used to correct a sentencing order, as long as the nunc pro tunc entry reflects what the court actually did, and is not an attempt to modify the court's judgment. *State v. Breedlove*, 46 Ohio App.3d 78, 546 N.E.2d 420 (1st Dist.1988). The transcript of the sentencing hearing and the aggregate prison term ordered by the trial court at the sentencing hearing and in its sentencing entry demonstrate that the trial court ordered Houston to serve the prison term imposed for count 7 consecutively to the sentences in counts 1, 2, 3, 4, 10 and 13. Therefore, we remand this cause to the trial court to correct the entry to properly reflect the court's judgment. *See State v. Kimmie*, 8th Dist. Cuyahoga No. 98979, 2013-Ohio-2906 (a trial court can correct a sentencing entry nunc pro tunc when the entry fails to

reflect the imposition of consecutive prison terms and when the trial court's intention to impose consecutive terms is manifest in the record).

### Conclusion

{¶43}    Having considered and overruled all three assignments of error, we affirm the judgment of the trial court.  We remand the cause to the trial court for the limited purpose of correcting the judgment entry to reflect the trial court's determination that Houston is to serve his prison sentence for count 7 consecutively to the terms imposed for counts 1, 2, 3, 4, 10 and 13 and the gun specifications to counts 4 and 7.

Judgment affirmed and cause remanded.

**CUNNINGHAM, P.J.**, and **DEWINE, J.**, concur.

Please note:
   The court has recorded its own entry on the date of the release of this opinion.