[Cite as *In re H.S.*, 2017-Ohio-457.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| IN THE MATTER OF: | : | |
| H.S. and T.S., | : | Case No. 16CA3569 |
| | | 16CA3570 |
| | : | |
| Adjudicated Dependent | | DECISION AND JUDGMENT ENTRY |
| Children. | : | |

_____

APPEARANCES:

Matthew P. Brady, Chillicothe, Ohio, for Appellant.

Matthew S. Schmidt, Ross County Prosecuting Attorney, and Jennifer L. Ater, Ross County Assistant Prosecuting Attorney, Chillicothe, Ohio, for Appellee.

_____

CIVIL APPEAL FROM COMMON PLEAS COURT, JUVENILE DIVISION
DATE JOURNALIZED: 2-3-17
ABELE, J.

{¶ 1} This is a consolidated appeal from two Ross County Common Pleas Court, Juvenile Division, judgments that granted South Central Ohio Jobs and Family Services, Children's Division (SCOJFS), appellee herein, permanent custody of twelve-year-old H.S.[1] and fourteen-year-old T.S. S.R., the children's biological mother and appellant herein, raises the following assignments of error for review:

> FIRST ASSIGNMENT OF ERROR:
>
> "THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN NOT DETERMINING AND CONSIDERING THE WISHES OF THE MINOR CHILDREN AS PART OF ITS DECISION."

_____

[1] H.S. turned 13 in September 2016, after the trial court's permanent custody decision.

SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT VIOLATED THE DUE PROCESS RIGHTS OF THE MINOR CHILDREN BY NOT ASCERTAINING THEIR WISHES OR ASSIGNING THEM SEPARATE COUNSEL FROM THE GUARDIAN AD LITEM."

{¶ 2} On September 24, 2013, appellee sought and received temporary emergency custody of H.S. and T.S. On that same day, appellee filed dependency complaints and requested temporary custody. In its attached statement of facts, appellee alleged that on September 23, 2013, a Chillicothe police officer requested appellee to respond to the residence where the children resided with their father. The officer informed the case worker that the police department had received multiple reports of drug activity at the father's residence. The officer additionally explained to the case worker that the previous night, a "loud disturbance" occurred in the father's residence back yard, which involved "'known' drug dealers" who possessed firearms. The father admitted to the officer that the father had been "smoking crack the past 2 weeks" and allowed "known drug dealers to stay at and visit the home." The case worker asserted that (1) the children were present during drug use and when drug dealers were in the home, (2) the children have missed five days of school thus far, and (3) on the date she responded to the home, the children were home from school because the father overslept.

{¶ 3} The case worker explained that the father informed her that he did not have any relatives who could care for the children and that appellant, their mother, is homeless. He further indicated that appellant often stays at a friend's house that "has been raided within the last 9 months." The children reported that appellant "uses drugs, and they have stayed with her at the Chillicothe Inn before and seen razor blades in the bathroom." The court subsequently

continued the children in appellee's temporary custody pending further hearings.

{¶ 4} On February 12, 2014, the magistrate entered "order[s]" that adjudicated the children dependent and that ordered them to remain in appellee's temporary custody.[2]  The trial court did not, however, adopt the magistrate's "order[s]" that adjudicated the children dependent and did not enter separate judgments that adjudicated the children dependent until September 2016.

{¶ 5} On March 7, 2014, appellant filed motions that requested the court to place the children in her care.  She alleged that she "has been in full compliance" with the case plan.  Appellant later withdrew her motions.

{¶ 6} On April 1, 2014, the magistrate entered dispositional decisions that continued the

---

[2] Recently, we learned the magistrate has issued "orders" that are, in reality, decisions that require court approval.   We thus remind the court and the magistrate that a magistrate may issue an "order" without court approval when the order is "necessary to regulate the proceedings" and when the order is "not dispositive of a claim or defense."   Juv.R. 40(D)(2)(a)(i).   When the magistrate issues a ruling regarding a dispositive claim or defense (such as an abuse, neglect, dependency, or delinquency adjudication), then the magistrate must issue a "decision" that requires court approval to become effective.   Juv.R. 40(D)(4)(a); *see generally In re C.T.*, 9th Dist. Medina No. 14CA0007-M, 2014-Ohio-4267.   Moreover, the court must enter its own separate and independent judgment.   Juv.R. 40(D)(4)(a). While we understand the time constraints and the overwhelming case loads in juvenile cases, the judge retains ultimate oversight over the case.   As the court explained in *Huntington Natl. Bank v. Greer*, 3rd Dist. Union No. 14-15-01, 2015-Ohio-3403, 2015 WL 5005095, ¶11:

Every member of the judicial system must understand and act accordingly with their position in the system.  This includes magistrates.   "To presume a higher authority, or even to convey an appearance of more authority, than that which is authorized by law and the Civil Rules causes participants in the legal system to question the role of the trial judge."   *Roychoudhury [v. Roychoudhury*, 3rd Dist. Union No. 14-1419, 2015-Ohio-2213, ¶28 (Rogers, P.J., concurring). "The final responsibility lies with the trial judge, and no conduct should be permitted which allows anyone to question that role."   *Id.,* citing *Vian v. Vian,* 3d Dist. Mercer No. 10–13–05, 2013–Ohio–4560, ¶54 (Rogers, J., concurring).

children in appellee's temporary custody. On that same date, the trial court judge signed entries that repeated the magistrate's decision and states, in part:

> "It is the finding of the Magistrate [sic] that said child was previously adjudicated to be a dependent child.
> The Magistrate [sic] further finds that permitting the child to remain in his own home is contrary to the welfare and best interests of the child and that reasonable efforts were made to prevent or eliminate the need for removal of the child from his home, and therefore orders that the child be committed to the temporary custody of [appellee]."

{¶ 7} On August 29, 2014, appellee filed a motion that requested the court to continue the children in its temporary custody for six months. To support its motion, appellee attached a letter from the children's case worker that stated that the father "has failed to address any of the agency or this court [sic] concerns." The case worker explained that the father "often tested positive for myriad of substances, including 'crack' cocaine and various opiates." The case worker noted that the father visited with the children, "but not [on] a consistent basis." The case worker asserted that although appellee previously "whole-heartedly supported [appellant's] efforts for reunification," appellant now "has been absent from this agency and has not maintain[ed] consistent visitation with her children." The case worker noted that appellant previously had demonstrated sobriety, but "it is rumored that she has relapse[d] and possibly overdose[d] at one time." The case worker stated that appellee presently is working to substantiate the recent allegations involving appellant. He indicated, however, that appellant "remains homeless, and absent from her children, this worker, and this agency." The case worker stated that due to the parents' lack of progress, appellee intended to seek permanent custody of the children.

{¶ 8}   On November 25, 2014, the magistrate issued a decision that noted on September 23, 2014 he held a combined review hearing and hearing to consider appellee's motion to extend temporary custody.[3]   The magistrate found that the children are "doing well" in appellee's temporary custody and that it is in the children's best interests to continue in appellee's temporary custody.   The magistrate therefore extended the temporary custody order for no more than six months.

{¶ 9}   On March 10, 2015, appellee filed a second motion to extend temporary custody and attached an updated letter from the case worker.   In the letter, the case worker stated that appellant "has moved to the Greenfield area, enrolled into substance abuse counseling in Hillsboro, currently prescribed Suboxone as an antagonist therapy, and is employed."   The case worker explained that in February 2015, appellant admitted that "she had relapsed and had battled thoughts of suicide."   The case worker related his belief that the parents "have exhausted their more than appropriate time table and have demonstrated their inability to maintain sobriety, follow recommended case services, and thus, follow their court approved case plan."   The case worker indicated that appellee would be seeking permanent custody of the children.   On March 23, 2015, the trial court extended the temporary custody order for six months.

{¶ 10} On April 9, 2015, the magistrate entered a decision noting that on March 23, 2015 he held a combined review hearing and hearing to consider appellee's motion to extend temporary custody.[4]   The magistrate again found that the children are "doing well" in appellee's

---

[3]   The record does not contain a transcript of the September 23, 2014 hearing.

[4]   The record does not contain a transcript of the March 23, 2015 hearing.

temporary custody and continued the temporary custody order.[5]

{¶ 11} On September 18, 2015, appellee filed a third motion to extend temporary custody and attached an updated letter from the case worker.   In the letter, the case worker stated that (1) the "parents continue not to engage or complete services," (2) the father's last known address is in Sandusky, Ohio, and (3) the mother is incarcerated and charged with second-degree felony felonious assault.   The case worker related his belief that the parents "have demonstrated their inability to maintain sobriety, follow recommended case services, and thus, follow their court approved case plan."   The case worker stated that the agency would seek permanent custody of the children.

{¶ 12} On September 21, 2015, the trial court extended the temporary custody order for an additional six months.[6]   On that same date, appellee filed motions that requested permanent custody of the children.   Appellee alleged that (1) the children have been in its temporary custody for more than twelve of the past twenty-two consecutive months; (2) the children cannot and should not be reunified with either parent within a reasonable time; and (3) placing the

---

[5]  We observe that the trial court, on March 23, 2015, had entered orders that extended temporary custody.

[6]  R.C. 2151.415(D)(4) prohibits a court from granting "an agency more than two extensions of temporary custody" and from ordering "an existing temporary custody order to continue beyond two years after the date on which the complaint was filed or the child was first placed into shelter care, whichever date is earlier, regardless of whether any extensions have been previously ordered pursuant to division (D) of this section."

On March 30, 2016, following the permanent custody decisions, the magistrate entered decisions indicating that it had conducted a review hearing on September 21, 2015.   The magistrate's decisions extended the temporary custody orders for an additional six months and set the matter for a hearing to be held on September 19, 2016.   We note, however, that on September 21, 2015 the trial court already had extended the temporary custody orders.   Thus, the magistrate's decisions on the same issue several months later are of no effect. Furthermore, the magistrate need not order temporary custody to continue for an additional six months when the magistrate had determined that permanent custody is in the children's best interests.

children in appellee's permanent custody is in their best interests. To support its motion, appellee attached the case worker's affidavit. The case worker averred that the children have been in appellee's temporary custody since September 22, 2013.[7] The case worker alleged that the father:

> "has failed to maintain stable housing for more than three months, he has lived in multiple residences within the past two years and has failed to keep the agency informed of the changes in address; has failed to consistently drug screen and has failed to present consistently with negative drug screens when he does screen; has failed to participate in recommended services including drug and alcohol counseling; has failed to consistently visit with the child; and has failed to complete the case plan."

{¶ 13} The case worker stated that appellant "has failed to consistently visit with the child, has failed to maintain stable housing, has continued to abuse illegal substances and she is currently incarcerated at the Ross County Jail." The case worker further asserted that the parents have not remedied the conditions that led to the children's removal and that the children cannot and should not be returned to either parent. He also opined that placing the children in appellee's permanent custody is in their best interest.

{¶ 14} On January 6, 2016, the guardian ad litem filed a recommendation that the court place the children in appellee's permanent custody.

{¶ 15} On January 14, 2016, the magistrate held a hearing to consider appellee's permanent custody motions. Appellee presented two witnesses, both of whom testified that the parents failed to comply with the case plan requirements. Greg Parks testified that the father was referred PRISM Behavioral Health Care, but did not follow through with a treatment plan.

---

[7] Appellee's motions allege that the children have been in its temporary custody since September 24, 2013 (the typeface reads, "September 22," but someone wrote "4" over the second "2," so that it reads "24."

{¶ 16} SOCJFS case worker Terry Hale testified that the case plan required the father to maintain housing for at least three months, to seek drug and alcohol counseling, to maintain sobriety, and to maintain regular contact with children and children services. Hale stated that the father did not comply with the case plan requirements.

{¶ 17} Hale explained that for a four-month period during late 2014 and early 2015, appellant was doing "incredibly well," but she relapsed in February 2015. Hale testified that appellant was evicted from her apartment that children services helped her obtain and had been living with her boyfriend in a motel, until she was arrested in July or August. Hale stated that appellant remains incarcerated.

{¶ 18} Hale testified that the children have been in appellee's custody since September 24, 2013, and that they are in an adoptable placement. Hale stated that appellee did not find any suitable relatives who could care for the children. Hale indicated that the father had not remedied the conditions that led to the children's removal, and that he did not believe the children could be reunified with either appellant or their father.

{¶ 19} At the end of the hearing, the magistrate requested that the parties submit written arguments. In its written argument, appellee asserted that the children had been in its temporary custody for more than twelve out of the past twenty-two months and that placing the children in its permanent custody would be in their best interests. Appellee's written argument, like the evidence that it presented at the permanent custody hearing, focused primarily upon the parents' lack of progress on the case plan over the two-year period.

{¶ 20} In her written argument, appellant agreed that the children have been in appellee's temporary custody for more than twelve out of the past twenty-two months. She asserted,

however, that clear and convincing evidence does not support a finding that placing the children in appellee's permanent custody is in their best interests. Appellant argued that she "has maintained consistent contact with the children." She recognized that although she had not completed the case plan, she claims that the evidence shows that she made progress. She admitted that she is incarcerated with an uncertain release date. Appellant further agreed that she "had housing issues in the past," but "she did have substantial periods of time during which she maintained a stable household."

{¶ 21} The guardian ad litem's written statement related his belief that placing the children in appellee's permanent custody was the only option. The guardian ad litem thus opined that placing the children in appellee's permanent custody would be in their best interests.

{¶ 22} On March 21, 2016, the magistrate issued decisions concerning appellee's permanent custody motions. The magistrate found that the children have been in appellee's custody since September 2013 and thus determined that the children have been in appellee's temporary custody "for twelve or more months of a consecutive twenty-two month period." The magistrate additionally found that the father (1) "continues to have an untreated drug addiction," (2) "failed to complete drug counseling services as directed," (3) "continues to test positive for illegal drugs," and (4) has "not maintained stable housing" that is suitable for the children. The magistrate found that appellant (1) continues "to suffer from untreated drug addiction," (2) "refused to comply with drug addiction counseling services," (3) "was convicted of Felony Abduction while these matters were pending," (4) "is currently incarcerated in CBCF," and (5) "failed to maintain suitable housing for the children." The magistrate further found that (1) the children need a stable, permanent placement, (2) neither parent can provide the children with a

legally secure permanent placement, and (3) the children are adoptable. The magistrate also observed that the children's guardian ad litem recommended that the children be placed in appellee's permanent custody. The magistrate thus concluded: "Based on the totality of the circumstances the Magistrate finds by clear and convincing evidence that Permanent Custody is in  the best interest of the children." Although the magistrate found that permanent custody is in the children's best interests, the magistrate's decisions did not specifically order that the children be placed in appellee's permanent custody.

{¶ 23} On the same date as the magistrate's decisions, the trial court issued journal entries regarding appellee's permanent custody motions. The court first noted that it "consider[ed]" the magistrate's decision, then included findings and the conclusion that "Permanent Custody is in the best interest of the children." Like the magistrate's decisions, the trial court's decisions did not specifically order that the children be placed in appellee's permanent custody.

{¶ 24} On August 12, 2016, the magistrate filed "nunc pro tunc" decisions that essentially repeated his March 21, 2016 decisions, but added the following: "Accordingly, it is hereby recommended that the child shall be placed in the permanent custody of [appellee] and that [the parents'] parental rights shall be permanently terminated and severed." On that same date, the trial court also entered identical "nunc pro tunc" journal entries. The court also (1) added language to indicate that it "approved and adopted" the magistrate's decisions, (2) added language similar to the magistrate's: "Accordingly, it is hereby Ordered that the child shall be placed in the permanent custody of [appellee] and that the [parents'] rights shall be permanently terminated and severed."

{¶ 25} On September 12, 2016, appellant filed notices of appeal from the court's August 12, 2016 nunc pro tunc entries. On September 22, 2016, after appellant filed her notices of appeal, the trial court entered decisions that indicated that the court "consider[ed]" the magistrate's decisions regarding the February 14, 2014 adjudicatory hearing and that adjudicated the children dependent. On that same date, the magistrate and the trial court each entered additional "nunc pro tunc" decisions that granted appellee permanent custody of the children.

A

FINAL, APPEALABLE ORDERS

{¶ 26} Before we consider appellant's assignments of error, we first must address some procedural matters to ascertain whether we have jurisdiction to hear the appeal. Courts of appeals have jurisdiction to "affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals within the district." Section 3(B)(2), Article IV, Ohio Constitution. "As a result, '[i]t is well-established that an order [or judgment] must be final before it can be reviewed by an appellate court. If an order [or judgment] is not final, then an appellate court has no jurisdiction.'" *Gehm v. Timberline Post & Frame*, 112 Ohio St.3d 514, 2007–Ohio–607, 861 N.E.2d 519, ¶14, quoting *Gen. Acc. Ins. Co. v. Ins. Co. of N. Am.*, 44 Ohio St.3d 17, 20, 540 N.E.2d 266 (1989). "An order is a final, appealable order only if it meets the requirements of both R.C. 2505.02 and, if applicable, Civ.R. 54(B)." *Lycan v. Cleveland*, 146 Ohio St.3d 29, 2016-Ohio-422, 51 N.E.3d 593, ¶21, citing Gehm at ¶15. In the event that the parties involved in the appeal do not raise this jurisdictional issue, then the appellate court must sua sponte raise it. *Chef Italiano Corp. v. Kent State Univ.*, 44 Ohio St.3d 86, 541 N.E.2d 64

(1989), syllabus; *Whitaker-Merrell v. Geupel Co.*, 29 Ohio St.2d 184, 186, 280 N.E.2d 922 (1972).

R.C. 2505.02(B) defines the characteristics of a final order and states in relevant part:

> An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:
> * * * *
> (2) An order that affects a substantial right made in a special proceeding or upon a summary application in an action after judgment[.]
> * * * *

{¶ 27} "Actions in juvenile court that are brought pursuant to statute to temporarily or permanently terminate parental rights are special proceedings, as such actions were not known at common law." *In re Adams*, 115 Ohio St.3d 86, 2007-Ohio-4840, 873 N.E.2d 886, ¶43, citing *In re Murray,* 52 Ohio St.3d 155, 161, 556 N.E.2d 1169 (1990) (Douglas, J., concurring in syllabus and judgment). Additionally, "it is manifest that parental custody of a child is an important legal right protected by law and, thus, comes within the purview of a 'substantial right' for purposes of applying R.C. 2505.02." *In re Murray*, 52 Ohio St.3d at 157. Therefore, an order that deprives a parent of custody is a final order under R.C. 2505.02(B)(2).

{¶ 28} "Generally, an appeal of a judgment or final order must be filed within 30 days from the entry of the judgment or order." *In re H.F.,* 120 Ohio St.3d 499, 2008–Ohio–6810, 900 N.E.2d 607, ¶10; *see* App.R. 4(A). This rule is jurisdictional, and absent exceptions not applicable here, we cannot consider any appeal filed outside of this thirty-day time period. *State v. Blankenship,* 4th Dist. Ross No. 13CA3364, 2013–Ohio–5261, ¶4; accord *Robirds v. Stidham*, 4th Dist. Scioto No. 16CA3749, 2016-Ohio-5081, 2016 WL 3981020, ¶9; *In re W.P.P.*, 4th Dist. Washington No. 15CA34, 2016-Ohio-345, 2016 WL 527077, ¶9.

{¶ 29} In the case at bar, the trial court entered three sets of decisions concerning appellee's permanent custody motions. Appellant filed noticed of appeal within thirty days of the court's second set of decisions, i.e., the August 2016 nunc pro tunc decisions. To determine whether appellant timely appealed, we must examine the trial court's decisions to ascertain at what point the trial court entered final orders.

{¶ 30} The first decisions (March 2016) determined that permanent custody is in the children's best interests. The decisions did not, however, expressly grant appellee permanent custody or otherwise order that the children be placed in appellee's permanent custody. Additionally, as of March 2016, the trial court had not adopted the magistrate's February 2014 dependency adjudication and entered its own independent and separate judgment that adjudicated the children dependent.

{¶ 31} In August 2016, the trial court entered "nunc pro tunc" decisions that essentially repeated the March 2016 decisions, but the court added language that expressly indicated it "adopted" the magistrate's decision. The court also added a statement of the relief granted: "Accordingly, it is hereby Ordered that the child shall be placed in the permanent custody of [appellee] and that the [parents'] rights shall be permanently terminated and severed." As of August 2016, the court still had not adopted the magistrate's February 2014 dependency adjudication and entered its own independent and separate judgment that adjudicated the children dependent.

{¶ 32} After appellant filed her notices of appeal, the trial court apparently recognized that it had not adopted the magistrate's decisions adjudicating the children and entered its own separate and independent judgment adjudicating the children dependent. Thus, on September

22, 2016, the court entered two decisions - one adjudicated the children dependent, and the other essentially repeated its August 2016 "nunc pro tunc" decisions.

{¶ 33} Accordingly, to determine whether we have jurisdiction to consider the appeal, we initially must ascertain whether the trial court's August 2016 "nunc pro tunc" decisions could be final orders in the absence of decisions adjudicating the children dependent. If they could be, then we would need to determine whether the August 2016 "nunc pro tunc" decisions effected substantive changes that created new rights, or whether the decisions simply corrected what the court actually decided but failed to carry over to its March 2016 decisions. If the August 2016 decisions could not be final, appealable orders in the absence of decisions adjudicating the children dependent, then we would need to determine whether the trial court's September 22, 2016 decisions adjudicating the children dependent cured the defect, which then renders appellant's notices of appeal premature. We start by examining the first of these questions, i.e., whether the trial court's August 2016 "nunc pro tunc" decisions could be final, appealable orders in the absence of decisions adjudicating the children dependent.

B

VOID OR VOIDABLE JUDGMENTS

{¶ 34} Our inquiry regarding whether the trial court's August 2016 nunc pro tunc decisions are final, appealable orders in the absence of judgments adjudicating the children dependent focuses upon whether a trial court's failure to adopt a magistrate's adjudication renders the court's subsequent dispositional order void or voidable.

> [W]hether a judgment is void or voidable generally depends on "whether the Court rendering the judgment has jurisdiction." *Cochran's Heirs' Lessee v. Loring*, 17 Ohio 409, 423 (1848).

"The distinction is between the lack of power or want of jurisdiction in the Court, and a wrongful or defective execution of power. In the first instance all acts of the Court not having jurisdiction or power are void, in the latter voidable only. A Court then, may act, first, without power or jurisdiction; second, having power or jurisdiction, may exercise it wrongfully; or third, irregularly. In the first instance, the act or judgment of the Court is wholly void, and is as though it had not been done. The second is wrong and must be reversed upon error. The third is irregular, and must be corrected by motion."

*Id.* at 423, quoting *Paine's Lessee v. Mooreland,* 15 Ohio 435, 445 (1846). Thus, a judgment is generally void only when the court rendering the judgment lacks subject-matter jurisdiction or jurisdiction over the parties; however, a voidable judgment is one rendered by a court that lacks jurisdiction over the particular case due to error or irregularity. *In re J.J.,* 111 Ohio St.3d 205, 2006-Ohio-5484, 855 N.E.2d 851, at ¶10, 15.

*Miller v. Nelson-Miller*, 132 Ohio St.3d 381, 2012-Ohio-2845, 972 N.E.2d 568, ¶12.

{¶ 35} Despite the apparent clarity of the void-voidable distinction, the Ohio Supreme Court held that an exception applies in criminal cases: "a sentence that is not in accordance with statutorily mandated terms is void." *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, ¶8. Thus, "'[a] sentence that does not include the statutorily mandated term of postrelease control is void, is not precluded from appellate review by principles of res judicata, and may be reviewed at any time, on direct appeal or by collateral attack.'" *State v. Billiter*, 134 Ohio St.3d 103, 2012-Ohio-5144, 980 N.E.2d 960, ¶7, quoting *Fischer* at paragraph one of the syllabus.

[I]f a trial court imposes a sentence that is unauthorized by law, the sentence is void. "'The effect of determining that a judgment is void is well established. It is as though such proceedings had never occurred; the judgment is a mere nullity and the parties are in the same position as if there had been no judgment.'"

*Billiter* at ¶10, quoting *State v. Bezak,* 114 Ohio St.3d 94, 2007-Ohio-3250, 868 N.E.2d 961, ¶12, quoting *Romito v. Maxwell,* 10 Ohio St.2d 266, 267–268, 227 N.E.2d 223 (1967). "But if the sentencing court had jurisdiction and statutory authority to act, sentencing errors do not render the sentence void, and the sentence can be set aside only if successfully challenged on direct appeal." *State v. Williams*, 2016-Ohio-7658, ¶23, citing *Fischer* at ¶6–7; *State v. Payne,* 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶28.

{¶ 36} The Ohio Supreme Court has thus far "determined that a sentence is void when the trial court fails to impose a statutorily mandated term of postrelease control; when it fails to include a mandatory driver's license suspension in the offender's sentence; and when it fails to include a mandatory fine in the sentence." *Williams*, 2016-Ohio-7658, ¶21, citing *State v. Singleton,* 124 Ohio St.3d 173, 2009-Ohio-6434, 920 N.E.2d 958, ¶18, 25, 36, *State v. Harris,* 132 Ohio St.3d 318, 2012-Ohio-1908, 972 N.E.2d 509, paragraph one of the syllabus, and *State v. Moore,* 135 Ohio St.3d 151, 2012-Ohio-5479, 985 N.E.2d 432, syllabus.

{¶ 37} We extended the void sentence doctrine to a juvenile court's disposition in a delinquency matter. *In re J.C.*, 4th Dist. Ross No. 15CA3510, 2016-Ohio-5362; *In re G.S.*, 4th Dist. Pike No. 14CA852, 2015-Ohio-1285. In *G.S.*, the juvenile appealed the trial court's decision that revoked his community control and imposed a suspended commitment to the Department of Youth Services. Although the magistrate had adjudicated the juvenile delinquent, the trial court never adopted the magistrate's delinquency adjudication. We determined that the trial court's failure to adopt the magistrate's delinquency adjudication meant that it could not enter a dispositional order. We explained:

Under Juv.R. 40(D)(4)(a) a magistrate's decision is not effective unless the trial court adopts it. Thus, a magistrate's delinquency adjudication is of no effect unless and until the trial court adopts it. *In re C.B.,* 2nd Dist. Montgomery No. 23615, 2010-Ohio-2129, ¶34. "[M]agistrate's decisions * * * have no adjudicative force or effect, regardless of the findings or conclusions contained therein, unless and until the court adopts them." *Roe ex rel. Roe v. Heap,* 10th Dist. Franklin No. 03AP–586, 2004–Ohio–2504, ¶36; *accord In re P.S.,* 10th Dist. Franklin No. 07AP–516, 2007–Ohio–6644.

A court cannot "consider matters relating to disposition" until "there has been an adjudication." Giannelli and Salvador, Ohio Juvenile Law, Section 19.1 (2014). This means that until a trial court adopts a magistrate's delinquency decision, the trial court lacks authority to consider matters relating to disposition. Thus, a dispositional order entered before the court adopts the magistrate's * * * adjudication is void, as being contrary to law. *See State v. Fischer,* 128 Ohio St.3d 92, 2010–Ohio–6238, ¶22, 23; *State v. Payne,* 114 Ohio St.3d 502, 2007–Ohio–4642, ¶27 ("A void [judgment] is one that a court imposes despite lacking * * * the authority to act."); *In re C.W.,* 2013–Ohio–2483, 991 N.E.2d 1167, (4th Dist.) ("If a juvenile court imposes a sanction that is unauthorized by law, then that sanction is void."), citing *State v. Billiter,* 134 Ohio St.3d 103, 2012–Ohio–5144, ¶ 10. *See, also In re Brown,* 9th Dist. Medina App. No. 3096–M (Feb. 28, 2001), 2001 WL 196578 (stating that trial court dispositional order is invalid until court entered adjudication order).

"'The effect of determining that a judgment is void is well established. It is as though such proceedings had never occurred; the judgment is a mere nullity and the parties are in the same position as if there had been no judgment.'" *Billiter* at ¶10, quoting *State v. Bezak,* 114 Ohio St.3d 94, 2007–Ohio–3250, 868 N.E.2d 961, ¶12, quoting *Romito v. Maxwell,* 10 Ohio St.2d 266, 267–268, 227 N.E.2d 223 (1967). When a trial court issues a judgment without authority to do so, the court of appeals may vacate the order and dismiss an appeal from that order. Painter & Pollis, Ohio Appellate Practice (2014–2015 ed.), Section 2:1 and fn. 7. *See also Fifth Third Mtge. Co. v. Rankin,* 4th Dist. Pickaway No. 11CA18, 2012–Ohio–2804, ¶9; *State v. Clay,* 4th Dist. Lawrence No. 11CA23, 2013–Ohio–4649, ¶76 (noting that an appellate court has inherent authority to vacate a void judgment); *Infinite Sec. Solutions, L.L.C. v. Karam Properties I, Ltd.,* 6th Dist. Lucas No. L–12–1313, 2013–Ohio–4415, ¶24 (stating that void judgment is not a final, appealable order); *State v. Bedford,* 184 Ohio App.3d 588, 2009–Ohio–3972, 921 N.E.2d 1085 ¶11 (9th Dist.) (observing that void judgment is not a final, appealable order). "A court has inherent power to vacate a void judgment because such an order simply recognizes the fact that the judgment was always a nullity." *Cincinnati School Dist. Bd. of Ed. v. Hamilton Co. Bd. of Revision,* 87 Ohio St.3d 363, 368, (2000), citing *Van DeRyt v. Van DeRyt,* 6 Ohio St.2d 31, 36, 35 O.O.2d 42, 215 N.E.2d 698 (1966).

Id. at ¶17-19.

{¶ 38} Thus, In *G.S.* we held that in the absence of a trial court judgment (and not merely a magistrate's decision) adjudicating the juvenile delinquent, the trial court's dispositional orders were void.

{¶ 39} In the case at bar, in February 2014 the magistrate adjudicated the children dependent. In September 2016, more than two years later, the trial court adopted the magistrate's decisions adjudicating the children dependent and entered its own separate and independent judgments that adjudicated the children dependent.[8] If we were to apply the *G.S.* logic to the case at bar, any dispositional orders entered between February 2014 and September 2016 would appear to be void. We do not believe, however, that the *G.S.* logic applies to abuse, neglect, and dependency cases. Instead, because our holding in *G.S.* was based upon the Ohio Supreme Court's criminal sentencing cases, we limit *G.S.* to juvenile delinquency cases. As we explain below, we do not believe that the rationale for extending criminal protections to delinquency cases also applies to permanent custody cases.

{¶ 40} We recognize that "parents' interest in the care, custody, and control of their children 'is perhaps the oldest of the fundamental liberty interests recognized by [the United States Supreme] Court.'" *In re B.C.*, 141 Ohio St.3d 55, 2014-Ohio-4558, 21 N.E.3d 308, ¶19, quoting *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000). Thus, "parents who are 'suitable' have a 'paramount' right to the custody of their children." *Id.*,

---

[8] We note that the trial court's April 1, 2014 entries recited that "[i]t is the finding of the Magistrate that [the children were] previously adjudicated" dependent. The court did not, however, state that it, as opposed to the magistrate, adjudicated the children delinquent.

quoting *In re Perales,* 52 Ohio St.2d 89, 97, 369 N.E.2d 1047 (1977), citing *Clark v. Bayer,* 32 Ohio St. 299, 310 (1877); *In re Murray,* 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990). Additionally, the Ohio Supreme Court has described the permanent termination of parental rights as "'the family law equivalent of the death penalty in a criminal case.'" *In re Hayes,* 79 Ohio St.3d 46, 48, 679 N.E.2d 680 (1997), quoting *In re Smith*, 77 Ohio App.3d 1, 16, 601 N.E.2d 45 (6th Dist. 1991). Thus, courts must afford parents facing the permanent termination of their parental rights "'every procedural and substantive protection the law allows.'" *Id.*, quoting *Smith* at 16; *accord B.C.* at ¶19.

{¶ 41} Affording parents "'every procedural and substantive protection the law allows'" does not, however, mean that parents facing termination of parental rights share the same procedural and substantive protection the law affords criminal defendants and juveniles alleged to be delinquent. In *B.C.*, for instance, the Ohio Supreme Court rejected the argument that "due process requires that a parent whose parental rights have been terminated be afforded the right to a delayed appeal from the judgment of termination, comparable to the delayed appeal afforded to certain defendants by App.R. 5(A)." *Id.* at ¶1.

{¶ 42} We therefore believe that limiting *G.S.* to cases involving juvenile delinquents makes sense in light of the Ohio Supreme Court's refusal to find that the rights afforded criminal defendants and juvenile delinquents are coextensive with parents facing the loss of their parental rights.[9] Moreover, we do not believe that an abuse, neglect, or dependency adjudication carries

---

[9] Additionally, we note that the Ohio Supreme Court's recent *Williams* decision may render our holdings in *J.C.* and *G.S.* suspect. The *Williams* court seems to have limited its prior decisions to void sentences, meaning sentences that contradict the express punishments permitted in the criminal sentencing statutes, and not necessarily to sentences that contradict statutory procedure. *Id.* at ¶22

the same inherently criminal aspects of a juvenile delinquency adjudication. *In re A.G.*, 2016-Ohio-3306, — N.E.3d —, 9, quoting *Breed v. Jones*, 421 U.S. 519, 530-351, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975) (stating that "there 'is little to distinguish' an adjudicatory hearing in a juvenile delinquency case from a traditional criminal prosecution"). An abuse, neglect, or dependency adjudication, in itself, does not necessarily lead to a termination of parental rights. *See* R.C. 2151.353(A) (outlining dispositional alternatives for abuse, neglect, and dependency adjudications, only one of which is permanent custody). A delinquency adjudication, on the other hand, may result in a juvenile being committed "to the legal custody of the department of youth services for secure confinement" and being subject to other "rehabilitative" consequences. *See* R.C. 2152.01(A), 2152.16, and 2152.19. Thus, although both proceedings are civil in nature, a juvenile charged with delinquency is entitled to "'numerous constitutional safeguards [that] normally [are] reserved for criminal prosecutions.'" *State v. Hand*, 2016-Ohio-5504, ¶15, quoting *State v. Walls,* 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, ¶ 26. Additionally, "[t]he criminal aspects of juvenile delinquency proceedings require greater constraints on juvenile courts." *State ex rel. Jean Baptiste v. Kirsch*, 134 Ohio St.3d 421, 2012-Ohio-5697, 983 N.E.2d 302, ¶29, quoting *In re Cross*, 96 Ohio St.3d 328, 2002-Ohio-4183,

---

(explaining that "courts may impose sentences only as provided by statute"). Yet nearly in the same breath, the *Williams* court continued: "'No court has the authority to impose a sentence that is contrary to law,' *[Fischer]* at ¶23, [and] when the trial court disregards statutory mandates, '[p]rinciples of res judicata, including the doctrine of the law of the case, do not preclude appellate review. The sentence may be reviewed at any time, on direct appeal or by collateral attack.' *Id.* at ¶ 30." *Id.*; *see id.* at ¶2 (stating that "[a] court only has authority to impose a sentence that conforms to law"). The problem, as we see it, is what the phrase, "contrary to law," means. As we held in *G.S.* and *J.C.*, a trial court's delinquency dispositional order appears "contrary to law," in the absence of a proper delinquency adjudication. Under *Williams*, however, the phrase "contrary to law," seems to mean contrary to the specific sentencing guidelines set forth in the criminal sentencing statutes. Until the Ohio Supreme Court further clarifies the meaning of "contrary to law," however, trial courts would be well-advised to fully comply with Juv.R. 40.

774 N.E.2d 258, ¶25. Thus, "a juvenile court's jurisdiction in a delinquency case is more limited than in an abuse, neglect, or dependency case." *Id.* at ¶31. The Ohio Supreme Court has not extended the same constitutional safeguards, "constraints," and jurisdictional limitations that apply in delinquency proceedings to permanent custody proceedings involving abused, neglected, or dependent children. *Cf. B.C.*

{¶ 43} Furthermore, voiding orders in abuse, neglect, and dependency cases due to failures to comply with Juv.R. 40 "would inject further uncertainty into the process of placing the child in a permanent home and postpone resolution of custody, contrary to the child's best interest." *Id.* at ¶24. Voiding orders could result in delays and prolonged limbo for the child, and "'[t]here is little that can be as detrimental to a child's sound development as uncertainty over whether he is to remain in his current "home," under the care of his parents or foster parents, especially when such uncertainty is prolonged.'" *Id.* at ¶20, quoting *Lehman v. Lycoming Cty. Children's Servs. Agency*, 458 U.S. 502, 513–514, 102 S.Ct. 3231, 73 L.Ed.2d 928 (1982).

{¶ 44} Additionally, holding that all orders that do not comply with Juv.R. 40 are void has "disastrous implications."[10] Painter and Pollis, Ohio Appellate Practice, Section 2.3.

---

[10] Painter and Pollis explain:

> It is highly likely that the archives of the 88 courts of common pleas and the even-more-numerous municipal courts in Ohio contain tens of thousands of trial-court orders that technically are not final because of defective language purporting to rule on objections or to adopt a magistrate's decision. Years or even decades later, one of the parties could come forward to demand a truly final order and then begin the appellate process long after the case was thought to have been resolved. That result has disastrous implications, and there is reason to suspect that the Ohio Supreme Court would not endorse it.

*Id.*, citing *Miller v. Nelson-Miller, supra.*

Consequently, we do not believe that the trial court's failure to adopt the magistrate's decision and to adjudicate the children dependent until September 2016 voids all prior dispositional orders. *Cf. Miller v. Nelson-Miller, supra* (determining that trial judge's delegation of signing divorce decree to magistrate and failure to sign divorce decree in accordance with Civ.R. 58 does not render decree void); *In re J.J.*, 111 Ohio St.3d 205, 2006-Ohio-5484, 855 N.E.2d 851 (concluding that juvenile court not divested of subject matter jurisdiction in neglect and custody proceeding even though magistrate exceeded authority by transferring case to a visiting judge). Rather, upon a timely appeal, the prior dispositional orders would have been voidable. Thus, the trial court's August 2016 decisions granting appellee permanent custody of the children are not void, but merely voidable. Because the decisions are not void, they could constitute final, appealable orders under appropriate circumstances, which is the next question we consider.

C

AUGUST 2016 NUNC PRO TUNC DECISIONS

{¶ 45} The next part of our analysis involves whether the August 2016 nunc pro tunc decisions are final, appealable orders.

{¶ 46} "It is elementary that courts possess inherent common-law power to enter judgments or orders nunc pro tunc in proper cases." *Natl. Life Ins. Co. v. Kohn*, 133 Ohio St. 111, 113, 11 N.E.2d 1020 (1937). "The general purpose of such an entry is to record a prior but unrecorded act of the court." *Id.* "[T]he power to make *nunc pro tunc* entries is restricted ordinarily to the subsequent recording of judicial action previously and actually taken. It is a simple device by which a court may make its journal speak the truth." *Id.*; *accord State ex rel. Fogle v. Steiner*, 74 Ohio St.3d 158, 163-164, 656 N.E.2d 1288 (1995). A nunc pro tunc entry

"'speaks the truth' by correcting a judicial record that fails to show an order or a judgment of the court because the order or judgment was not recorded at all in the first instance." *State v. Breedlove*, 46 Ohio App.3d 78, 81, 546 N.E.2d 420 (1st Dist.1988). "[N]unc pro tunc entries are limited in proper use to reflecting what the court actually decided, not what the court might or should have decided or what the court intended to decide." *State ex rel. Fogle v. Steiner*, 74 Ohio St.3d at 164.

{¶ 47} "[T]he function of a *nunc pro tunc* order is, essentially, clerical: it is to record officially an action or actions of a court actually taken but not duly recorded." *Breedlove*, 46 Ohio App.3d at 81 citing *Helle v. Pub. Util. Comm.*, 118 Ohio St. 434, 161 N.E. 282 (1928); *Webb v. Western Reserve Bond & Share Co.*, 115 Ohio St. 247, 153 N.E. 289 (1926); *Reinbolt v. Reinbolt*, 112 Ohio St. 526, 147 N.E. 808 (1925). "Errors subject to correction by the court include a clerical error, mistake, or omission that is mechanical in nature and apparent on the record and does not involve a legal decision or judgment." *Lester* at ¶18; *accord State ex rel. Cruzado v. Zaleski,* 111 Ohio St.3d 353, 2006-Ohio-5795, 856 N.E.2d 263. In general, a clerical mistake is "'the type of error identified with mistakes in transcription'" rather than with any legal decision or conclusion. *Dentsply Internatl., Inc. v. Kostas*, 26 Ohio App.3d 116, 118, 498 N.E.2d 1079 (8th Dist. 1985), quoting *In re Merry Queen Transfer Corp.*, 266 F.Supp. 605, 607 (E.D.N.Y. 1967). Stated another way, clerical errors consist of "blunders in execution." *Rowell v. Smith,* 186 Ohio App.3d 717, 930 N.E.2d 360, 2010–Ohio–260 (10th Dist.), ¶15, quoting *Wardeh v. Altabchi,* 158 Ohio App.3d 325, 815 N.E.2d 712, 2004–Ohio–4423 (10th Dist.), ¶10, quoting *Kuehn v. Kuehn*, 55 Ohio App.3d 245, 247, 564 N.E.2d 97 (12th Dist. 1988).

{¶ 48} A trial court may not use a nunc pro tunc entry to effect "[s]ubstantive changes in

judgments, orders, or decrees." *Nichols v. Nichols,* 2013–Ohio–3927, 997 N.E.2d 1262 (10th Dist.), ¶12, citing *Thurston v. Thurston,* 10th Dist. Franklin No. 02AP–555, 2002–Ohio–6746. "A substantive mistake consists of instances where the court changes its mind, either because it made a legal or factual mistake in making its original thought, [or because on second thought] it has decided to exercise its discretion in a different manner." *Lakhi v. Healthcare Choices & Consultants, LLC,* 10th Dist. Franklin No. 06AP–806, 2007–Ohio–4127, ¶36 (internal quotations omitted); *accord Dickerson v. Cleveland Metro. Hous. Auth.*, 8th Dist. Cuyahoga No. 96726, 2011-Ohio-6437, 2011 WL 6287991, ¶11.

{¶ 49} Because a proper nunc pro tunc entry does not affect substantive rights but merely corrects a clerical or mechanical error, a proper nunc pro tunc entry does not give rise to a new final order for purposes of appeal. *State v. Lester,* 130 Ohio St.3d 303, 2011-Ohio-5204, 958 N.E.2d 142, syllabus ("A nunc pro tunc judgment entry issued for the sole purpose of complying with Crim.R. 32(C) to correct a clerical omission in a final judgment entry is not a new final order from which a new appeal may be taken"). "'Nunc pro tunc' means 'now for then' and is commonly defined as '[h]aving retroactive legal effect through a court's inherent power.' Black's Law Dictionary (9th Ed.2009) 1174. Therefore, a nunc pro tunc entry by its very nature applies retrospectively to the judgment it corrects." *Id.* at ¶19. Thus, proper nunc pro tunc decisions do not constitute final, appealable orders. *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶31 (stating that nunc pro tunc entry "does not create a new final, appealable order"). Nor do they "restart the clock" for purposes of filing a timely appeal. *State v. Damron*, 4th Dist. Scioto No. 10CA3375, 2011-Ohio-165, ¶10; *accord State ex rel. Womack v. Marsh,* 128 Ohio St.3d 303, 943 N.E.2d 1010, 2011–Ohio–229, ¶15, quoting *State v.*

*Yeaples*, 180 Ohio App.3d 720, 2009-Ohio-184, 907 N.E.2d 333 (3rd Dist.), ¶15 (stating that

"'[a] nunc pro tunc entry is the procedure used to correct clerical errors in a judgment entry, but

the entry does not extend the time within which to file an appeal, as it relates back to the original

judgment entry'").

> Only when the trial court changes a matter of substance or resolves a genuine ambiguity in a judgment previously rendered should the period within which an appeal must be taken begin to run anew. *Perfection Stove Co. v. Scherer* (1929), 120 Ohio St. 445, 449, 166 N.E. 376; *Aetna Life & Casualty v. Daugherty* (Apr. 21, 1983), Cuyahoga App. No. 45368, unreported. The relevant inquiry is whether the trial court, in its second judgment entry, has disturbed or revised legal rights and obligations which by its prior judgment had been settled with finality. See *F.T.C. v. Minneapolis & Honeywell Co.* (1952), 344 U.S. 206, 73 S.Ct. 245, 97 L.Ed. 245.

*Soroka v. Soroka*, 8th Dist. Cuyahoga No. 62739 (June 17, 1993) *accord In re J.R.*, 8th Dist.

Cuyahoga No. 92957, 2009-Ohio-4883, 2009 WL 2964368, ¶¶10-11.

{¶ 50} In the case sub judice, appellant recognizes that she filed her notices of appeal

within thirty days of the trial court's "nunc pro tunc" decisions and that proper nunc pro tunc

decisions are not appealable. Appellant claims, however, that the trial court's nunc pro tunc

decisions made "substantial and substantive changes" to its March 2016 decisions by explicitly

ordering that the children be placed in appellee's permanent custody and by terminating

appellant's parental rights. Appellant thus asserts that the August 2016 decisions give rise to her

right to appeal.

{¶ 51} In *J.R.*, the court confronted a similar issue and determined that the trial court's

nunc pro tunc entry did not substantively change its original decision when the nunc pro tunc

entry added language indicating that the court granted the children services agency's permanent

custody motion and terminated the appellant's parental rights. In *J.R.*, in June 2004, the court

entered a decision that found "a grant of permanent custody is in the child's best interest." *Id.* at

¶5. In February 2009, the court entered a nunc pro tunc decision that stated: "The Motion to

Modify Temporary Custody to Permanent Custody is granted and the parental rights of [the

children's parents] are terminated." *Id.* at ¶8. The children's mother appealed from the court's

February 2009 nunc pro tunc decision. The appellate court determined that the court's February

2009 nunc pro tunc decision did not change a matter of substance or resolve a genuine ambiguity

and thus, did not create a right of appeal. The court thus concluded that the time for the mother

to appeal the trial court's June 2004 decision began to run when the court entered the June 2004

decision, and not when it filed the February 2009 nunc pro tunc decision. The court noted that a

nunc pro tunc decision "does not extend the deadline for filing an appeal; it relates back to the

date of the original entry." *Id.* at ¶11.

{¶ 52} The appellant nonetheless asserted that the June 2004 decision "did not

conclusively terminate her parental rights," but instead, "the February 2009 entry actually

terminated her parental rights and revised the rights enumerated in the June 2004 entry." *Id.* at

¶12. The appellate court disagreed. The court recited the trial court's June 2004 entry, which

stated:

> "This matter came on for hearing this 2nd day of June, 2004 * * * upon
> the motion for permanent custody as to the children [J.R. and A.A.] and upon the
> motion to modify temporary custody to Planned Permanent Living Arrangement
> as to the child [P.A.] * * *.
> The order heretofor[e] made committing children to the temporary custody
> of CCDCFS is now terminated. * * *
> In Re: [A.A. and J.R.]: * * * the Court finds by clear and convincing
> evidence that a grant of permanent custody is in the best interests of the child and
> the children cannot be placed with one of the children's paren's within a
> reasonable period of time or should not be placed with either parent.
> The Court further finds that: The children are abandoned. The children are

orphaned and there are no relatives of the children who are able to take permanent custody. * * * The children [have] been in temporary custody of a public children services agency or private child placing agency under one or more separate orders of disposition for twelve or more months of a consecutive twenty-two month period.

The Court further finds that: Following the placement of the children outside the children's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the children to be placed outside the home, the parents have failed continuously and repeatedly to substantially remedy the conditions causing the children to be placed outside the children's home. The chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the children at the present time and, as anticipated, within one year.

The parent committed any abuse against the children, caused the children to suffer any neglect, or allowed the children to suffer any neglect between the date that the original complaint alleging abuse or neglect was filed and the date of the filing of the motion for permanent custody.

The parent has demonstrated a lack of commitment toward the children by failing to regularly support, visit, or communicate with the children when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the children.

The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the children or an order was issued by any other court requiring treatment of the parent. The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the children or to prevent the children from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.

The parent has committed abuse against the children or caused or allowed the children to suffer neglect and the court determines that the seriousness, nature, or likelihood of recurrence of abuse or neglect makes the children's placement with the children's parent a threat to the child's safety."

*Id.* at ¶12.

{¶ 53} Although the trial court's June 2004 decision did not explicitly place the children in the agency's custody, specifically state that the court granted the agency's motion for

permanent custody, or expressly terminate the mother's parental rights, the appellate court nevertheless determined:

> Clearly, the June 2004 journal entry terminated mother's parental rights, finding that [the child] could not be reunited with her. The nunc pro tunc entry of February 2009 did not revise her legal rights but reiterated that permanent custody was granted, thereby terminating mother's parental rights, so it relates back to the June 2004 journal entry. Because the court's underlying substantive determinations were not disturbed or revised in the nunc pro tunc order, we conclude that final judgment was entered in 2004.

*Id.* at ¶14. The court additionally noted that the trial court stated during the June 2004 proceeding: "And so I grant permanent custody of [the children]."

{¶ 54} Similarly, in the case at bar, the trial court did not explicitly state in its March 2016 decision that it granted appellee permanent custody of the children. That result is, however, readily apparent from the court's decision. The court noted that the magistrate held a final hearing concerning appellee's permanent custody motion. The remainder of the court's decision reads:

> The children in the instant case had been in agency custody for twelve or more months of a consecutive twenty-two month period. The children were removed from their father on September 2013 and have remained in the agency['s] custody since.
> The father of the children continues to have an untreated drug addiction. He has failed to complete drug counseling services as directed. He continues to test positive for illegal drugs, when he can be located to test. Father has, in addition, not maintained stable housing suitable for his children.
> The mother of the children also has continued to suffer from untreated drug addiction throughout. She has refused to comply with drug addiction

counseling services.  She was convicted of Felony Abduction while these matters were pending.  She is currently incarcerated in CBCF in addition the mother too [sic] has failed to maintain suitable housing for these children.

The children herein are in need of a stable and permanent placement that cannot be provided by either parent.  The children are adoptable.

The Guardian ad Litem has recommended that Permanent Custody be granted.

Based on the totality of the circumstances the Court finds by clear and convincing evidence that Permanent Custody is in the best interest of the children herein.

{¶ 55} Thus, although the trial court did not specifically state that it granted appellee permanent custody of the children, that result is manifest from its decisions.  The court made the findings R.C. 2151.414(B)(1) requires in order to award a children services agency permanent custody of a child.  The court found that (1) the children had been in appellee's custody for more than twelve out of the past twenty-two months (R.C. 2151.414(B)(1)(d)), and (2) that permanent custody is in the children's best interests (R.C. 2151.414(B)(1)).  The court additionally determined that neither parent could provide the children with a stable and permanent home.  Thus, even though the court did not explicitly state that it granted appellee permanent custody of the children, that result is implicit within the court's decision.  Accordingly, because the court made all necessary findings to support an award of permanent custody to appellee, its failure to specify the relief granted was a mechanical error, or a "blunder in execution," rather than a substantive change to its original decisions.  We further observe that the court expressly indicated that its March 2016 decisions were "final, appealable orders," thus evidencing its belief that nothing remained to be determined.[11]

---

[11] We recognize that a trial court cannot make an order final and appealable simply by uttering "final appealable order."  *See generally In re Estate of Adkins*, 4th Dist. Lawrence No. 16CA22, 2016-Ohio-5602, 2016 WL 4537814, ¶5, citing *Ft. Frye Teachers Assn. v. Ft. Frye Local School Dist. Bd. of Edn.*, 87 Ohio App.3d 840 (4th Dist.1993) (stating that "appellate courts are not bound by a trial court's

{¶ 56} Moreover, whether the trial court did or did not specify that appellant's parental rights were terminated does not affect our decision that the August 2016 nunc pro tunc entries did not substantively change the court's March 2016 decisions. By operation of law, a grant of permanent custody to a children services agency terminates the natural parent's rights. R.C. 2151.011(B)(32) states:

> "Permanent custody" means a legal status that vests in a public children services agency or a private child placing agency, all parental rights, duties, and obligations, including the right to consent to adoption, and divests the natural parents or adoptive parents of all parental rights, privileges, and obligations, including all residual rights and obligations.

Thus, language in a trial court's permanent custody decision that terminates a parent's parental rights is not necessary in order to divest the parent of all parental rights. *See In re Sims,* 7th Dist. Jefferson No. 02–JE–2, 2002–Ohio–3458 (noting that the effect of permanent custody is to permanently divest the parents of their parental rights).

{¶ 57} Consequently, we do not believe that the court's August 2016 entries effected substantive changes to its original decisions. Instead, the court corrected a mechanical error in that the court's original decisions did not expressly state the relief it granted.[12] The court's

---

determination or statement that a judgment constitutes a final appealable order"). In the case sub judice, we make note of the court's classification of its decisions as final, appealable orders merely to show that the court believed it had entered final decisions regarding appellee's permanent custody motions and that the August 2016 entries, therefore, did not substantively change the court's earlier decisions.

[12] If appellant had timely appealed the trial court's March 2016 decisions, we questioned whether we would have dismissed the appeals for lack of final, appealable orders due to the March 2016 decisions' failure to expressly state the relief granted. *In re A.R.*, 4th Dist. Ross No. 07CA3000, 2008-Ohio-4822, 2008 WL 4308281, ¶8, citing *Yahraus v. Circleville,* 4th Dist. Pickaway No. 00CA04,

August 2016 entries did not change its original decisions, but instead, merely ensured that the record correctly reflected the relief granted. Thus, the August 2016 decisions did not create a new right of appeal and did not extend the time for appellant to appeal the March 2016 decisions. Accordingly, appellant did not timely appeal the trial court's March 2016 decisions.

D

SEPTEMBER 2016 DECISIONS

{¶ 58} We next consider whether the court's September 2016 decisions created a right of appeal and thereby made appellant's notices of appeal prematurely filed. See App.R. 4(C) ("A notice of appeal filed after the announcement of a decision, order, or sentence but before entry of the judgment or order that begins the running of the appeal time period is treated as filed immediately after the entry."). After appellant filed her notices of appeal, the trial court filed two decisions in each case. One adjudicated the children dependent, and the other essentially repeated its August 2016 nunc pro tunc decisions. For the reasons we set forth below, we believe that the trial court lacked jurisdiction to enter the September 2016 entries. Therefore, the September 2016 entries are void and not appealable.

{¶ 59} "'[O]nce an appeal is perfected, the trial court is divested of jurisdiction over

---

2000-Ohio-2019 ("One fundamental principle of the law of judgments is that in order to terminate an action, the judgment must contain a statement of the relief being afforded."). Even if we had reached this conclusion, Civ.R. 60(A) would have permitted us to grant leave in order to permit the trial court to enter nunc pro tunc decisions. Civ.R. 60(A) states: "During the pendency of an appeal, [clerical or mechanical] mistakes may be so corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is pending may be so corrected with leave of the appellate court." *Cf. Ballinger v. Ballinger*, 8th Dist. Cuyahoga Nos. 100958, 101074, 101655, 101812, 2015-Ohio-590, 2015 WL 754839, ¶64, citing *Doe v. Catholic Charities,* 158 Ohio App.3d 49, 2004–Ohio–3470, 813 N.E.2d 977 (8th Dist.), citing Civ.R. 60(A) and App.R. 9(E) (noting that proper nunc pro tunc entries permitted while appeal pending); *Ferraro v. B.F. Goodrich Co.*, 149 Ohio App.3d 301, 2002-Ohio-4398, 777 N.E.2d 282, 2002 WL 1972599 (9th Dist.), ¶9-11 (concluding that trial court retained jurisdiction in order to enter nunc pro tunc entry adding Civ.R. 54(B) language so decision would be a final, appealable order).

matters that are inconsistent with the reviewing court's jurisdiction to reverse, modify, or affirm the judgment.'" *State ex rel. Electronic Classroom of Tomorrow v. Cuyahoga Cty. Court of Common Pleas*, 129 Ohio St.3d 30, 2011-Ohio-626, 950 N.E.2d 149, ¶13, quoting *State ex rel. Rock v. School Emp. Retirement Bd.,* 96 Ohio St.3d 206, 2002-Ohio-3957, 772 N.E.2d 1197, ¶8. Stated differently, once a case has been appealed, the trial court loses jurisdiction except to take action in aid of the appeal. *State ex rel. Special Prosecutors v. Judges, Court of Common Pleas*, 55 Ohio St.2d 94, 97, 378 N.E.2d 162 (1978).

{¶ 60} Additionally, "the determination as to the appropriateness of an appeal lies solely with the appellate court." *In re S.J.,* 106 Ohio St.3d 11, 2005-Ohio-3215, 829 N.E.2d 1207, ¶10. Consequently, "a trial court judge's opinion that the order appealed from is not a final, appealable order does not alter the fact that the filing of the notice of appeal divests the trial court of jurisdiction." *State ex rel. Electronic Classroom of Tomorrow* at ¶16. Thus, "[a] juvenile judge has no authority to determine the validity or merit of an appeal." *S.J.* at ¶10.

{¶ 61} In the case at bar, once appellant filed her notices of appeal, the trial court lost jurisdiction over matters that are inconsistent with our jurisdiction to reverse, modify, or affirm the judgment. The trial court nevertheless entered dependency adjudications and essentially refiled its nunc pro tunc decisions that granted appellee permanent custody. We believe, however, that the trial court's decisions interfered with this court's authority to consider whether appellant properly invoked our jurisdiction. The trial court apparently entered its September 2016 adjudication and permanent custody decisions based upon its belief that its prior orders were void due to the judge's failure to adopt the magistrate's 2014 dependency adjudications. The judge's determination, however, that its prior decisions were void interfered with this court's

ability to determine whether appellant properly invoked this court's jurisdiction.   Therefore, the trial court's September 2016 decisions are void and do not create a new right of appeal.

E

CONCLUSION

{¶ 62} The trial court's September 2016 entries are void because the trial court lacked authority to determine that its prior orders were void and therefore not appealable.   The court's August 2016 decisions did not substantively change the March 2016 decisions and, thus, did not create a new right to appeal.   Generally, because appellant did not file notices of appeal within thirty days of the trial court's March 2016 decisions, appellant's appeals are untimely.   Accordingly, based upon the foregoing reasons, we dismiss these appeals.

{¶ 63} Additionally, we wish to point out that even if the issues raised in appellant's assignments of error had been properly preserved and presented in this appeal, we would find no merit to those arguments.   We believe, after our review of the record, that it is in the children's best interest to grant permanent custody to the agency.   This situation is unfortunate and we do not question appellant's sincere desire to have custody of her children.   However, we agree with the trial court's conclusion that the children's need for legally secure placement could not, in light of the evidence adduced during the trial court proceedings and the children's custodial history, be achieved without the award of permanent custody.

APPEALS DISMISSED.

Harsha, J., concurring in part and dissenting in part:

{¶ 64} I readily agree with the majority in limiting the application of the voidness rule in *J.C. & G.S.* to delinquency cases. However, I cannot join in their holding that the trial court's March 2016 entries constituted final appealable orders.

{¶ 65} In my view the court did not issue a final appealable order until August 12, 2016 when it filed entries explicitly ordering an award of permanent custody to the agency. None of the entries prior to August 12, 2016 constituted judgments because they did not expressly contain a statement of the relief granted. In fact at best, they were simply best-interest findings or a decision that included findings.

{¶ 66} A decision indicates what the court finds and intends to impose as a result. A judgment must unequivocally order the relief that court deems appropriate. *See Downard v. Gilliland*, 4th Dist. Jackson No. 10CA2, 2011-Ohio-1783, ¶ 11, citing *St. Vincent Charity Hosp. v. Mintz*, 33 Ohio st,3d 121, 123, 515 N.e.2d 917 (1987) Consequently, "a purported judgment that does not specify the relief granted does not terminate the action and does not constitute a final appealable order." *Downard* at ¶ 10. The judgment entry "must contain clear language to provide basic notice of the parties' rights, duties, and obligations." *In re L.J.S.*, 4th Dist. Wash. No. 16CA8, 2016-Ohio-8107, ¶ 12.

{¶ 67} The March 2016 entries never awarded permanent custody of the children to the agency and permanently severed parental rights. The trial court merely stated in its March 2016 entries that it found "by clear and convincing evidence that Permanent Custody is in the best interest of the children herein." The March 2016 entries did not specify the relief granted and did not contain clear language providing basic notice to the parties that the court was awarding

permanent custody and severing the parent's rights to their children. Thus, they are not final appealable orders, i.e. they did not determine the action and preclude a judgment in favor of the appellant under R.C.2505.02(B)(1). Moreover, the March 21, 2016 entries did not affect a substantial right in a special proceeding under R.C.2505.02(B)(2) because they did not have "immediate consequences," i.e. they did not unequivocally order the appropriate relief. Those entries merely constituted decisions, or mere best-interest findings.

{¶ 68} In my view the final appeal orders in this case occurred on August 12, 2016 when the trial court definitively ordered permanent custody be vested with the agency, thus terminating the appellant's parental rights. Because the mother filed her notice of appeal from these entries on September 12, 2016 her appeal is timely and we should therefore address the merits of her assignments of error. I respectfully dissent.

JUDGMENT ENTRY

It is ordered that the appeal be dismissed and that appellees recover of appellants costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hoover, J.: Concurs in Judgment & Opinion
Harsha, J.: Concurs in Part & Dissents in Part with Opinion

For the Court

BY:_____
Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.